UNITED STATES of America, Plaintiff,

v.

Gordon Stephen BUTTORFF, Defendant.

Civ. A. No. CA3–82–2154D.

United States District Court,
N.D. Texas,
Dallas Division.

April 13, 1983.

Randall M. Roden, Tax Div., Dept. of Justice, Washington, D.C., James A. Rolfe, U.S. Atty., Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

Joe Alfred Izen, Jr., Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court the Government's Motion for Preliminary Injunction against Defendant Gordon Stephen Buttorff (Buttorff). The Government claims that it is entitled to injunctive relief under the recently enacted section 7408 of the Internal Revenue Code of 1954. 26 U.S.C. § 7408. An evidentiary hearing was held before the Court on March 4 and 11, 1983. Based on the evidence presented at that hearing, and the arguments of the parties in light of the applicable law, the Court is of the opinion that the Motion for Preliminary Injunction should be granted.

I. *Tax Equity and Fiscal Responsibility Act of 1982*

Congress amended the Internal Revenue Code in 1982 to include injunctive relief as an available remedy against the promotion of abusive tax shelters. Section 321 of the

Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 [51 U.S.L.W. 99–100], added section 7408 to the Internal Revenue Code of 1954. The new section 7408 authorizes the United States to institute an action in federal district court at the request of the Secretary of Treasury to "enjoin any person from further engaging in conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.)." *Id.* Section 6700 in turn defines those actions subject to penalty. The Court is permitted to grant injunctive relief upon a finding that: (1) the person has engaged in conduct proscribed in section 6700, and (2) injunctive relief is "appropriate to prevent recurrence of such conduct." § 7408(b).

Section 6700 provides the following description of prohibited acts:

(a) Imposition of Penalty.—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in any entity or plan or arrangement referred to in subparagraph (a), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

. . . .

shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived by such person from such activity.

*Id.*

The legislative history of sections 7408 and 6700 evidences a dissatisfaction with previously existing remedies against the marketing and use of tax shelters. As the Senate Finance Committee indicated, the proliferation of abusive tax shelters, in combination with inadequate Internal Revenue Service (IRS) enforcement resources, "undermines public confidence in the fairness of the tax system and in the effectiveness of existing enforcement provisions." S.Rep. No. 97–494, 97th Cong., 2d Sess. at 266, U.S.Code Cong. & Admin.News 1982, pp. 781, 1014. The introduction of injunctive relief as an available remedy, according to the Senate Finance Committee report, was based on the perceived inadequacy of other penalty provisions and on the need to target the promoters, organizers, and salesmen of abusive tax shelters. S.Rep. No. 97–494, *supra,* at 266.

## II. *The Constitutional Pure Equity Trust*

The Government's action against Buttorff stems from his work as executive director of Constitutional Trust Associates. Buttorff offers advice to his customers in conjunction with the sale of trust packages which he claims will enable taxpayers to avoid probate proceedings, significantly limit income tax liability, and add an element of privacy to their financial dealings. Examples of the trust documents offered through Constitutional Trust Associates are included in the record as Government Exhibits 4 and 6.

### A. *Commercial Speech*

■ Buttorff contends that § 7408 permits an unconstitutional imposition of a prior restraint on protected speech. Before reaching the issue of whether a prior restraint is permissible in this instance, the Court must first decide whether the speech involved is protected under the first amendment. Buttorff does not dispute the fact that the statute is aimed at commercial speech. While commercial speech has experienced periods of expanded judicial protection under the first amendment, this protection has never extended to shield misleading commercial speech. As the Supreme Court noted in *Virginia Pharmacy Bd. v.*

*Virginia Consumer Council,* 425 U.S. 748, 771–72, 96 S.Ct. 1817, 1830–31, 48 L.Ed.2d 346 (1976), "Untruthful speech, commercial or otherwise, has never been protected for its own sake .... The First Amendment, as we construe it today does not prohibit the State from insuring that the stream of commercial information flow[s] cleanly as well as freely." *Id.*

The Supreme Court recently repeated this theme in *In re R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). In *R.M.J.* the Court noted that advertising may be prohibited entirely when the particular content or method of advertising suggests that it is inherently misleading or when experience has proven that in fact such advertising is subject to abuse. *Id.* at 203, 102 S.Ct. at 937, 71 L.Ed.2d at 74. In addition to misleading commercial speech, the Court has refused to shield speech which proposes an illegal activity or transaction. *See Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 1186, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (government may ban entirely any speech promoting illegal drug use). The struggle to balance the competing interests of public information and government regulation is absent when the activity promoted is itself unlawful. *Pittsburgh Press Co. v. The Pittsburgh Commissioner on Human Relations,* 413 U.S. 376, 389, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973) (upheld ordinance forbidding sex-designated help wanted columns).

■ The extension of first amendment protection to commercial speech recognizes the informational function of advertising and promotion. *Central Hudson Gas & Electric Co. v. Public Service Comm'n.,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). "Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it, ... or

commercial speech related to illegal activity...." *Id.* The Court finds that the alleged activity under attack in this action may properly be subject to control consistent with the first amendment. Having found that the alleged abuses do not fall within the protection of the first amendment, the Court need not wrestle with the appropriateness of a prior restraint except as that issue presents itself on the merits.

## B. *Violation of Section 6700*

The first step in the Court's analysis under section 7408 is to determine whether Buttorff's promotion and sale of the Constitutional Pure Equity Trust is subject to penalty under Section 6700 of the Internal Revenue Code of 1954. The evidence introduced for purposes of determining the Government's entitlement to a preliminary injunction indicates that Buttorff has engaged in such conduct.

■ The Government presented evidence that Buttorff advises his customers that all expenses of the trust, other than food consumed at home, are deductible. Several witnesses who purchased trusts from Buttorff indicated that they were advised to transfer all of their property into the trust and to then claim trust deductions for expenses relating to house maintenance and repair, insurance, automobile upkeep, and utilities. Buttorff's defense focused on the tortured construction of a hypothetical under which each of these expenses would qualify for a legitimate deduction. This response falls short of removing Buttorff's conduct from the purview of section 6700.[1] Buttorff's customers indicated that they were not told that the trust had to involve the running of a legitimate business. Buttorff's presentation focused on the trust's ownership of property as the quality essential to deductions, rather than the actual location and operation of a business. Both the trust owners' testimony and tape of a speech which Buttorff made (Government's Exhibit 9) reveal this inadequacy. As a

---

1. In addition, many of those advantages which Buttorff attributes to the Constitutional Pure Equity Trust are already available to an individual with legitimate business expenses who is not relying on the trust form.

general rule, personal expenses are not deductible. Buttorff's representation to the contrary, in the absence of statements of legitimate circumstances and conditions, constitute fraudulent statements as to a material matter under section 6700(a)(2)(A).

In addition to specific misleading statements, Buttorff assured prospective customers that the benefits of the trust could be secured lawfully. Disapproval of the techniques incorporated in the Constitutional Pure Equity Trust has been adamant and consistent. A recent case, *Hanson v. Commissioner*, 696 F.2d 1232 (9th Cir.1983), affirmed a tax court judgment of unpaid taxes and penalties based on a finding that a similar trust had no economic substance. The Ninth Circuit upheld the Tax Court's assessment of a negligence penalty against the taxpayer, stating "no reasonable person would have trusted this scheme to work," and characterizing the trust as a " 'flagrant tax avoidance scheme' repeatedly rejected by the courts." *Id.* at 1234.

■■ The courts have also found that pure equity trusts, such as the one promoted by Buttorff, run afoul of the grantor trust provisions of the Internal Revenue Code, 26 U.S.C. §§ 671–677. Under these provisions, a grantor of a trust who has retained certain powers which may be exercised without the approval or consent of an adverse party is treated as the owner of the trust and taxed individually. Buttorff's attempt to distinguish his trust from the trust examined in *Vnuk v. Commissioner*, 621 F.2d 1318 (8th Cir.1980), is without merit. A trust is not sheltered from the operation of the grantor trust provisions by an artificial construction of adversity between parties.

■ Buttorff's sales presentation can also be attacked as ignoring established assignment of income principles. Income is taxed to the person who earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949). Buttorff conceded that some of the statements recorded on Government's Exhibit 9 may not have been accurate, but he claimed that the tape was made in 1976 and that he did not become aware of the prohibition against assignment of income until 1977. The tape, however, was still available to prospective customers as late as December 1982.

■ The Court concludes at this stage of the litigation that Buttorff knew or had reason to know that the statements he made concerning the tax benefits of the Constitutional Pure Equity Trust were false. Dissatisfied customers who are presently entangled in IRS audits or who ceased relying on their trusts to achieve tax benefits agree that they should have been told the complete story. The legality of the scheme was a matter of importance to Buttorff's trust customers, such as Margaret Robbins, and thus the false statements should be considered material within the meaning of the statute.

## C. Appropriateness of Injunctive Relief

■ The traditional considerations governing entitlement to injunctive relief include: (1) a showing of a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to plaintiff outweighs potential harm to defendant; and (4) the public interest will not be jeopardized. *State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). The legislative process has already taken these factors into consideration in its decision to address the promotion of abusive tax shelters and the Court finds that each factor is specifically satisfied under the facts of this case.

One of these factors—the public interest—deserves special attention. The only person whose interests would be furthered by a denial of injunctive relief has no protectable interest at stake. Buttorff has exploited his customers with his ability, as one witness described it, "to charm a rattlesnake." According to the witnesses' testimony, trust purchasers paid from $2,500 to $13,000 for Buttorff's services. In exchange, they now face actual or anticipated risks and penalties. The cost to individual taxpayers is matched on a much larger

scale by the financial drain on the United States Treasury caused by lost revenues and depleted enforcement resources.

Buttorff capitalized on the average taxpayer's sense of injustice by promising advantages allegedly unknown to any but the wealthiest American taxpayers. In furtherance of his business, Buttorff cautioned his customers not to seek out the assistance of accountants or attorneys, who were likely to condemn the plan out of their own ignorance. To complete the scenario, Buttorff characterized the IRS as unwilling to challenge the trusts. No evidence came out during the hearing in support of Buttorff's representations that a single governmental employee in Washington, D.C., is responsible for processing the entire country's trust returns. While Buttorff may not have violated the statute by his references to the unlikelihood of an audit, this was not a "benefit" for which Buttorff or his trust could assume credit.

The new statute instructs this Court to consider the appropriateness of injunctive relief in light of the need to prevent a recurrence of the violation. The Court finds that the preliminary injunction is necessary to prevent further violation pending a full determination on the merits. This is not Buttorff's first encounter with the judicial setting. *See United States v. Buttorff,* 572 F.2d 619 (8th Cir.1978) (affirming conviction relating to false W–4 forms). In addition, there is no indication that Buttorff would agree to tailor his presentation to stay within the bounds of the law. It is clear that he is fundamentally opposed to the existing tax structure and that his position has not changed over time. In the tape made in 1976 Buttorff instructed his audience that they could deduct the expenses of a family trip to Disneyland because they were obliged as trustees to search for good investments for the trust. In 1982 Buttorff's associate advised a private investigator posing as an interested customer that he could deduct the expenses of a motorcycle because the trust would order the trustee to engage in stress-relieving recreation. The issuance of injunctive relief is appropriate and necessary to prevent further financial exploitation at the public's expense. The scope of the preliminary injunction is necessary as the only effective means of curtailing Buttorff's violation of the statute.

Buttorff raised two additional defenses. The Court already addressed Buttorff's first amendment arguments in response to his motion to dismiss. Nothing was raised at the hearing or in Buttorff's post-hearing brief to persuade the Court to reconsider its position. Buttorff also testified to an alleged break-in at his office and the theft of his client file. According to Buttorff, this incident led ultimately to the identification of his clients by the IRS for the purpose of conducting audits and securing testimony against Buttorff. Under a doctrine of unclean hands, Buttorff urges the Court to deny equitable relief. The overriding public interest would alone persuade the Court that relief should not be denied on this basis. In addition, it seems peculiarly inappropriate for Buttorff to raise such a defense after admitting to a past practice of instructing accountants not to sign returns as paid preparers. On the issue of the Government's ability to identify returns as prepared by Constitutional Trust Associates, the Court finds that the equities are fairly well balanced.

### III. *Order*

IT IS ORDERED that defendant Buttorff and all those in active concert or participation with him, including Constitutional Trust Associates and all those acting by, for, or through it, are hereby enjoined and restrained as follows:

1. Defendant and others described above are prohibited, pending the final hearing and determination of this action, from selling and promoting either directly or indirectly the "Constitutional Pure Equity Trust," or any similar scheme or device.

2. Defendant and others described above are prohibited, pending final determination, from representing that such a trust, scheme, or device eliminates or reduces the federal tax liability of a participant, and

are prohibited from furnishing or distributing materials, including tape recordings and written information, which so indicate.

3. Defendant and others described above are prohibited, pending final determination, from performing services for others such as counseling, tax return preparation, or preparation of deeds, resolutions, minutes, or other legal documents in connection with such trust, scheme or device, including those trusts sold or formed prior to the entry of this Order.