**UNITED STATES of America**

v.

**Gerald SAVOIE, Individually and doing business as Louisiana Caucus Club.**

**Civ. A. No. 84–1043.**

United States District Court, D. Louisiana, Lake Charles Division.

Oct. 5, 1984.

Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., Larry Meuwissen, Lynne Battaglia, Tax Div., Dept. of Justice, Washington, D.C., Lawrence W. Moon, Jr., Asst. U.S. Atty., Lafayette, La., for the U.S.

Gerald Savoie, pro se.

Taylor W. O'Hearn, Shreveport, La., for defendant.

VERON, District Judge.

## I. INTRODUCTION

This action was brought by the United States to obtain an injunction against Gerald Savoie, individually and doing business as the Louisiana Caucus Club, as well as against his agents, servants and employees. The Government claims that it is entitled to injunctive relief under sections 7402, 7407 and the recently enacted section 7408 of the Internal Revenue Code of 1954. 26 U.S.C. §§ 7402, 7407 & 7408. At the close of trial on September 19, 1984, we granted the Government a preliminary injunction. Based upon our further consideration of the evidence presented, and the arguments of the parties in light of applicable law, we now grant the Government an Order of Permanent Injunction based upon sections 7407 and 7408.[1]

Our opinion discusses at some length the specific provisions of these statutes, because they have received little judicial treatment to date.

---

1. The Government's suit seeks an injunction in part against Savoie's alleged interference with tax administration. 26 U.S.C. § 7402(a) gives district courts the jurisdiction to issue injunctions in civil actions "as may be necessary or appropriate for the enforcement of the Internal Revenue laws." Although the Government's suit seems to fit squarely within that statutory provision, we do not rely upon it in issuing our Order of Permanent Injunction; Savoie's interference can be enjoined under the more specific provision of section 7407, subsection (b)(1)(D), which targets "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws...."

## II. GERALD SAVOIE AS A PROMOTER OF ABUSIVE TAX–AVOIDANCE SCHEMES

### A. Code Sec. 7408

Sections 331 and 332 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324, added sections 6700 and 7408 to the Internal Revenue Code. Section 7408 authorizes the Internal Revenue Service to sue for an injunction on the grounds that the defendant has engaged in conduct subject to penalty under section 6700. 26 U.S.C. § 7408(a). If the district court finds that the defendant has engaged in such conduct and that injunctive relief is appropriate to prevent its recurrence, then the court may enjoin the defendant from engaging in it or in any other activity subject to penalty under section 6700. Sec. 7408(b).

26 U.S.C. § 6700 penalizes the following acts:

(a) Imposition of Penalty.—Any person who

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in any entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter

. . .

\* \* \* \* \* \*

shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived by such person from such activity.

■ Savoie argues that section 6700 applies only to promoters of abusive tax shelters and other abusive investment devices. His argument ignores the plain (and sweeping) language of the statute, which applies to "(ii) any investment plan or arrangement, or (iii) any *other* plan or arrangement." Sec. 6700(a)(1)(A) (emphasis added). Moreover, the Senate Finance Committee's Report on TEFRA confirms that Congress designed section 6700 as a "penalty provision specifically directed toward promoters of abusive tax shelters *and other abusive tax avoidance schemes.*" S.Rep. No. 97–494, 97 Cong., 2d Sess. 266, *reprinted in* [1982] U.S.Code Cong. & Ad. News 781, 1014 (emphasis added).

### B. Violation of Sec. 6700

■ We start our analysis under section 7408 by determining whether Savoie is subject to penalty under section 6700. This determination requires us to first ask whether Savoie has "organized" a tax-avoidance plan or arrangement within the meaning of section 6700(a)(1)(A)(iii). Savoie is the co-founder and Director of the Louisiana Caucus Club ("LCC" or "The Club"), the Louisiana affiliate of the American Patriot Network, which not only advocates four plans for evading income tax but also promises to help new members file amended tax returns based upon one or more of them. He authored two LCC tax publications: "Tax Loopholes for Working People" ("Tax Loopholes"), which details three of the plans, and the "Nameless Fifth Amendment Packet" ("Nameless Fifth"), which details the fourth. Thus Savoie has "organized" not one but several tax-avoidance plans, bringing us to our second question: whether Savoie has made false or fraudulent statements regarding (a) "the allowability of any deduction" in his promotion of the Schedule C and W–4 plans, (b) "the excludability of any income" in his promotion of the "Wages Not Income" plan, or (c) "the securing of any other tax benefit" in his promotion of the "Nameless

Fifth" plan. We find that Savoie has made fraudulent statements of each type.

In Tax Loopholes, in LCC meetings and in meetings with tax clients, Savoie advises that wages are excludable from gross income because the exchange of services for money is a nonprofit transaction, the value of wages being exactly that of the labor expended for them. In the Nameless Fifth packet and in LCC meetings, Savoie baldly declares that if taxpayers answer certain questions on their returns, the information might be used against them, meaning that they can write the word "object" in response to questions about their last name, address, Social Security number, occupation and income. Not only are these statements false, they are "clearly frivolous." *Davis v. United States Government*, 742 F.2d 171 at 172, slip op. at 5806 (5th Cir. 1984). It is equally clear that Savoie has made fraudulent statements about the allowability of deductions in promoting the Schedule C and W-4 schemes.

Savoie generally advises LCC members that they can claim numerous exemptions from withholding on Form W-4 for anticipated business losses and estimated medical expenses. He also advises members that they can obtain tax refunds by filing a Schedule C that characterizes their wages as gross receipts from the contracting business and then takes an offsetting deduction for "costs of goods sold." But Savoie fails to warn that in order to qualify for these deductions, taxpayers must actually be in business or anticipate medical expenses. These omissions reduce Savoie's statements to gross frauds.

Our third inquiry under section 6700 is whether Savoie knew or had reason to know that his statements were false or fraudulent, and we find that he knew. Savoie holds himself out to the public as an IRS consultant familiar with the Internal Revenue Code, its accompanying Regulations, and the federal caselaw construing them. He was presumably aware, therefore, that his "Wages Not Taxes" and "Nameless Fifth" plans are stale ones as far as the courts are concerned, long

deemed to be frivolous; indeed, the Fifth Circuit in *Davis, supra,* noted emphatically that these plans "have been rejected by us time and time again." Slip op. at 5806. Savoie was unquestionably aware of the fraudulence of his advice about the allowability of deductions under his Schedule C and W-4 plans, because it consisted exclusively of half-truths.

We have determined that Savoie organized several tax-avoidance plans about which he knowingly made false and fraudulent statements. To establish his violation of section 6700, we need to make only one additional finding: that those statements concerned "material matter." Dissatisfied LCC members and Savoie clients who are presently entangled in IRS audits, or who already have been assessed the "frivolous return" penalty of section 6702 plus interest on overdue taxes, would surely agree that they should have been warned about the frivolity of Savoie's "Wages Not Taxes" and "Nameless Fifth" plans. They would undoubtedly agree that they should have been told the complete story about his Schedule C and W-4 plans. The legality of Savoie's schemes was a matter of importance to LCC members and others receiving Savoie's advice, and thus his false and fraudulent statements must be considered material within the meaning of the statute.

### C. Propriety of Injunctive Relief Under Sec. 7408

 The decision to issue an injunction is governed by the traditional factors shaping the district court's use of the equitable remedy. Foremost among these factors is the requirement "that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 (1971); *O'Hair v. Hill*, 641 F.2d 307, 310 (5th Cir.1981). It is also familiar doctrine that in considering injunctive relief, the courts may examine the effect of such relief on the public interest. *See Hecht Co. v. Bowles*, 321 U.S. 321, 330, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944) (court reviews stat-

ute allowing injunctions to stop violations of Emergency Price Control Act, and concludes that simple grant of injunctive remedy "affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect"); *United States v. Ernst & Whinney,* 735 F.2d 1296, 1301 (11th Cir.1984) (quoting *Bowles* ).

■ The Government has no adequate remedy at law for combating Savoie's promotion of abusive tax-avoidance plans; actions against those following his plans would entangle the Government in a maze of lawsuits. And denying the Government injunctive relief would cause it irreparable injury. Defense counsel suggests that the Government will reap financial rewards if Savoie continues promoting his plans, because the interest and penalties assessed against taxpayers following them amounts to far more than auditing costs. But this argument ignores the fact that Savoie exhorts taxpayers to file numerous forms, including Forms W–4 designed to halt wage withholding and returns and amended returns claiming no taxable income. His exhortations have already generated a multitude of forms that impede tax administration; the forms necessitate examinations and audits which deplete available tax-enforcement manpower.

The third factor used in determining whether injunctive relief should issue pursuant to section 7408—the public interest—deserves special attention. The cost of Savoie's promotional activities to enforcement resources is matched on a much larger scale by the financial drain on taxpayers who are being audited, or have been audited, for heeding his tax advice. Most of Savoie's followers appear to be "working class" people of limited means, but their audits result in the imposition of the substantial five-hundred dollar "frivolous return" penalty plus the assessment of interest on outstanding taxes.

We must assess the propriety of enjoining Savoie under section 7408 not only in light of the traditional equitable criteria, but also in light of the need to prevent a recurrence of his section 6700 violations. Sec. 6700(b)(2). Savoie has never acknowledged that the "legal" arguments behind his "Wages Not Taxes" and "Nameless Fifth" plans are wholly frivolous, making it clear that he is fundamentally opposed to the existing tax structure. Nothing in the record indicates that Savoie would voluntarily confine his tax advice in LCC meetings and publications to stay within the bounds of the law. These considerations raise the spectre of recurring section 6700 violations, which is all the more disturbing because Savoie finds a receptive audience—average taxpayers who yearn for the tax advantages allegedly available to the rich.

Thus it is clear that the Government meets both the equitable and statutory criteria for injunctive relief under section 7408. Our only remaining question is whether issuing an injunction under that statute creates a prior restraint.

■ We conclude that no harm will come to Savoie's First Amendment rights from an injunction issued under section 7408. We would first enjoin Savoie from engaging in specific conduct such as inducing, aiding or abetting the filing of false or fraudulent wage withholding exemption forms, income tax returns and amended returns. While speech may be incidentally involved as a part of these prohibited activities, the Supreme Court has made it clear that:

> [I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced or carried out by means of language either spoken, written or printed.

*Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978), *quoting Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834 (1949). Second, we would restrain speech by pro-

hibiting Savoie from promoting or organizing false or fraudulent tax-avoidance plans, and from advertising, marketing or selling material to be used by taxpayers to avoid the payment of tax. This means that we would restrain commercial speech that is misleading and concerns unlawful activity. Such speech has never been shielded by the First Amendment.

The seminal case on point is *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), where the Supreme Court held that:

> Untruthful speech, commercial or otherwise, has never been protected for its own sake .... The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow[s] cleanly as well as freely.

*Id.*, at 771–72, 96 S.Ct. at 1830–31. The Court recently repeated this theme in *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), where it held that advertising may be prohibited entirely when the particular content or method of advertising suggests that it is inherently misleading, or when experience has proven that in fact such advertising is subject to abuse. *Id.*, at 203, 102 S.Ct. at 937. In addition to misleading commercial speech, the Court has refused to shield speech which proposes an illegal activity or transaction. *See Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (government may ban entirely any speech promoting illegal drug use). These cases remove any doubt that Savoie may be enjoined under section 7408 consistent with the First Amendment.

### III. SAVOIE AS AN INCOME TAX RETURN PREPARER

#### A. Code Sec. 7407

The Tax Reform Act of 1976, Pub.L. No. 94–455, added section 7407 to the Internal Revenue Code. 26 U.S.C. section 7407 authorizes the Internal Revenue Service to sue for an injunction prohibiting an income tax return preparer from engaging in specific practices or from acting as a preparer. The Service may seek an injunction if the preparer (1) engages in conduct subject to penalty under section 6694 or 6695, (2) misrepresents his eligibility to practice before the Service, or otherwise misrepresents his experience or his education as a preparer, (3) guarantees the payment of any tax refund or the allowance of any tax credit, or (4) engages in any other fraudulent or deceptive conduct which substantially interferes with Internal Revenue laws. Sec. 7407(b)(1). If the district court finds that the defendant is a preparer, has engaged in any such conduct and that injunctive relief is appropriate to prevent its recurrence, then the court may enjoin the defendant from further engaging in such conduct. Sec. 7407(b). Alternatively, if the court finds that the defendant has "continually or repeatedly" engaged in any such conduct, and that an injunction prohibiting it would be insufficient to prevent the defendant's interference with tax administration, then the court may enjoin the defendant from acting as an income tax return preparer. *Id.*

An income tax return preparer is defined as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed ... or any claim for refund of tax imposed ...." 26 U.S.C. § 7701(a)(36)(A). Only those who prepare "all or a substantial portion" of a return or refund claim can be considered preparers. 26 C.F.R. § 301.7701–15(b)(1). But the rendering of advice directly relevant to the determination of the existence, characterization, or amount of an entry will be regarded as the preparation of that entry. *Id.* This sort of advising would seem to make a person a preparer if the advice related to substantial portion of a return or claim for refund.

Section 6694 provides for the assessment of a one-hundred dollar penalty against the preparer each time he negligently or intentionally disregards tax rules and regulations in understating a taxpayer's liability.

Sec. 6694(a). That section also provides for the assessment of a five-hundred dollar penalty against the preparer each time he willfully attempts in any manner to understate the taxpayer's liability. Sec. 6694(b).

Section 6695 provides for the assessment of a twenty-five dollar penalty against the preparer each time he fails to (1) furnish the taxpayer a copy of the prepared return or claim for refund, Sec. 6695(a), (2) sign the return or claim for refund, Sec. 6695(b), or (3) furnish his identifying number in the return or claim for refund, Sec. 6695(c), unless he shows "that such failure is due to reasonable cause and not due to willful neglect."

### B. Savoie is a "Preparer" Within the Meaning of Sec. 7407

■ We start our analysis under section 7407 by finding that Savoie is a paid preparer within the meaning of the statute. We heard uncontroverted testimony that Savoie prepared three returns for a client, charging a twenty-five or thirty dollar fee. But even if we put that fact aside Savoie qualifies as a preparer. We also heard uncontroverted testimony that Savoie both prepared amended returns for LCC members, and advised them how to prepare "substantial portions" of such returns. Savoie must be considered to have been "paid" for his preparation and advice, though he did not bill for his services, because a purported benefit of paying LCC dues is The Club's help in preparing amended tax returns for the last three years.

### C. Savoie's Violation of Sections 6694 and 6695 and his Commission of Other Acts Listed in Section 7407(b)(1)

Our second task under section 7407 is to determine whether Savoie violated sections 6694 or 6695 or engaged in other conduct listed in its subsection (b)(1).

Savoie violated both sections 6694 and 6695. Savoie followed his "Wages Not Income" plan in each of the returns and amended returns that we have uncontroverted evidence he prepared. But Savoie holds himself out to the public as an IRS consultant familiar with the Internal Revenue Code, the regulations clarifying it, and the caselaw interpreting tax policy. As such he presumably knows that Section 61 defines gross income as "all income from whatever source derived" and that subsection (a)(1) lists "compensation for services" as one type of income. He presumably knows that Treasury Regulation Section 1.161–1(a) elaborates upon section 61, explaining that gross income includes all income "unless excluded by law," and that no regulation excludes "wages." We therefore conclude that when Savoie understated the taxpayers' liabilities, reporting no income from "wages" although they had W–2 forms confirming compensation received for services, he intentionally disregarded tax rules and regulations in violation of section 6694.

Savoie, as stated, violated section 6695. He affixed neither his signature nor a tax-preparer identification number to any of the returns that we have evidence he prepared, and he has shown no reasonable cause for these omissions, meaning that he committed numerous violations of subsections (b) and (c) of the statute. Savoie also misrepresents his eligibility to practice before the Internal Revenue Service; although Savoie does not appear to have had any formal training in accounting or in the law at any recognized institution, he represents that he is an IRS consultant. And Savoie has engaged in still other conduct listed in section 7407(b)(1), specifically, "other fraudulent or deceptive conduct which substantially interferes with the Internal Revenue laws."

Savoie runs afoul of the "catch-all" provision in Tax Loopholes, where he urges taxpayers to join the Carolina Patriots' class-action suit challenging the taxability of wages. He fraudulently represents the plaintiffs' chances of prevailing, stating that they have marshalled:

> an incredible portfolio of Supreme Court and appellate court cases which prove beyond a reasonable doubt (to a prudent person) that wages and salaries were *never* intended to be taxed by the enactment of the 16th Amendment.

Tax Loopholes for Working People (Government Exhibit 1) at 1 (emphasis in original). As the Fifth Circuit in *Davis, infra,* makes clear, the argument that wages are not taxable is patently frivolous. Worse, he interferes with the proper administration of Internal Revenue laws by representing that:

> By becoming a party to the law suit, a person is automatically entitled to go exempt on his W-4 Form with his employer by virtue of the fact that he is claiming that he owed no taxes the previous year(s) (if he earned no "income"), and that he anticipates that he will owe none in the current year. Additionally, the taxpayer is entitled to file for a refund of all the so-called income taxes that he'd [sic] paid in the past three (3) years.

*Id.*

### D. Propriety of Injunctive Relief Under Sec. 7407

The statutory criterion governing use of the section 7408 remedy—whether an injunction is appropriate to prevent a recurrence of the offending conduct—also governs use of the section 7407 remedy. Sec. 7407(b)(2). In our discussion of section 7408, we exhaustively reviewed both this statutory criterion and the equitable criteria for injunctive relief, so we observe briefly that each factor is specifically satisfied for injunctive relief under section 7407. Our analysis of the public interest differs materially under section 7407, but that is because we add this consideration: the only person whose interests would be furthered by denial of section 7407 relief, Savoie, has no constitutionally protectable interest at stake. A section 7407 injunction would be designed to prevent fraudulent conduct, and it would only incidentally impinge upon the speech by which that conduct is carried out in part. *See Ohralik, infra.*

The real question for our consideration is whether we should invoke the statutory option to enjoin Savoie from acting as an income tax return preparer. Under section 7407(b), if the court finds that the defendant has "continually or repeatedly" engaged in conduct listed in subsection (b)(1), and that an injunction against it would be insufficient to prevent the defendant's interference with tax administration, then the court may enjoin not only that conduct but also the defendant's preparation of tax returns for compensation. The record shows that Savoie has "continually" engaged in conduct listed in subsection (b)(1) since 1982. And in light of Savoie's unyielding opposition to the current tax structure, we hardly need to explain that an injunction against conduct listed in subsection (b)(1) would be insufficient to safeguard tax administration from Savoie's interference. Thus we will invoke the section 7407 option.

### III. ORDER OF PERMANENT INJUNCTION

IT IS ORDERED that defendant Gerald Savoie, individually and doing business as the Louisiana Caucus Club, and all those in active concert or participation with him, including all those acting by, for, and through the Louisiana Caucus Club, are hereby enjoined and restrained from directly or indirectly:

1. Inducing, aiding or abetting the filing of false or fraudulent wage-withholding exemption forms.

2. Inducing, aiding or abetting the filing of false or fraudulent federal income tax returns or amended returns.

3. Inducing or abetting the filing of false or fraudulent Schedules C.

4. Inducing, aiding or abetting the institution or prosecution of any civil action in any court in the United States based upon (a) the claim that wages or salaries or other compensation for labor or services are not subject to federal income tax or (b) any other such frivolous claim with respect to federal income taxation.

5. Organizing, assisting in the organization of, selling or otherwise promoting any plan or arrangement based upon (1) the false premise that wages, salaries or other compensation for labor or services are exempt from federal income taxation, (2) any

false or fraudulent claim regarding the allowability of any other tax benefit for federal income tax purposes, or (3) any other false or frivolous contentions regarding federal tax law.

6. Advertising, marketing, selling or otherwise distributing any document or other information to be used by taxpayers to avoid the payment of, or to obtain the refund of, federal income taxes, that is based on the false proposition that wages, salaries or other forms of compensation for labor or services not specifically excluded from taxation under Title 26 of the United States Code are not taxable income.

7. Preparing or assisting any individual by any means in the preparation of a false or fraudulent form, return or declaration claiming that the taxpayer is exempt from federal taxation or entitled to excessive multiple withholding allowances so as to reduce such taxation.

8. Preparing for compensation or employing one or more persons to prepare for compensation any return of federal income tax or any claim for refund of federal income tax, for any person other than:

a. himself

b. his regular and continuous employer, or

c. a person for whom he acts as a fiduciary, specifically, as a conservator, trustee or guardian.

Preparing a return includes providing individualized "samples" of returns to be recopied as well as the preparation of any schedule or a sample of any schedule to be made a part of a return.

9. Making or furnishing a statement in connection with organizing, assisting in the organization of, selling or participating in the sale of an interest in a partnership, entity, investment plan, or any other plan or arrangement:

a. With respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit, by reason of holding an interest in the entity or participating in the plan or arrange-

ment which the defendant knows or has reason to know is false or fraudulent as to any material matter, or

b. As to the value of property or services if the value directly relates to the amount of a deduction or credit for federal income tax purposes and if the value so stated exceeds 200% of the correct value.