NATIONAL COMMODITY AND BAR-
TER ASSOCIATION, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 85-M-1064.

United States District Court,
D. Colorado.

Jan. 13, 1986.

William A. Cohan, Carl E. Stahl, Cohan &
Stahl, Denver, Colo., for plaintiffs.

Angelo I. Castelli, James M. McCarten,
Trial Attys., Tax Div., Office of Special
Litigation, U.S. Dept. of Justice, Wash-
ington, D.C., Robert Hackman, Asst. U.S.
Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

MATSCH, District Judge.

On April 5, 1985, a United States Magis-
trate in this court issued search warrants
for the search of three locations, and the
seizure of books and records, gold and sil-
ver, and many other things in the care,
custody and control of the National Com-
modity and Barter Association (NCBA),
and the National Commodity Exchange
(NCE), as evidence of violations of Title 18,
United States Code, Section 371. The war-
rants were based on the affidavit of Larry
Bergsgaard, a special agent of the Criminal
Investigation Division of the Internal Reve-
nue Service, assigned to the St. Paul, Min-
nesota office.

The affiant set forth information ob-
tained during an investigation of "tax pro-
testors" in Minnesota, and described with
particularity the activities of Norbert Stel-
ten. The affidavit included information
pertaining to the NCBA offices located at
8000 E. Girard in Denver, Colorado, and
the manner in which the "warehouse ex-
change" worked by accepting from account
holders checks, cash, wire transfers, and
other property for deposit and exchange
into cash or precious metals on demand.

The purpose of such activity was said to
be the avoidance of tax by making financial
transactions without creating records
which could be used by the IRS in detect-
ing income in the course of tax investiga-
tions. After an evidentiary hearing, Judge
Kane of this court held that the affidavits

set forth sufficient probable cause, but concluded that the warrants were invalid because of the lack of particularity in the description of the items to be seized. Accordingly, the property seized was ordered to be returned. That decision was affirmed by the Tenth Circuit Court of Appeals in *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.1985).

A "Notice of Jeopardy Assessment," dated April 5, 1985, was issued to the NCBA and the NCE by the Internal Revenue Service pursuant to Section 6862 of the Internal Revenue Code. The notice asserted that a penalty had been assessed in the amount of $20 million for violating Section 6700 of the Code by promoting abusive tax shelters from September 4, 1982 through April 5, 1985. Notices of Levy and Notices of Seizure have been issued, and the same property seized by the invalid search warrants has been affected, together with certain bank accounts. This civil action challenges that jeopardy assessment and the associated liens and levies upon the NCBA/NCE. The government has filed a motion to dismiss, and plaintiffs have filed a motion for summary judgment.

The United States, as a sovereign entity, may be sued only to the extent it has consented to suit by statute. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). Actions which seek to enjoin the United States from collecting taxes are generally barred by the doctrine of sovereign immunity. The Anti-Injunction Act, 26 U.S.C. § 7421, specifically prohibits suits to restrain the assessment or collection of taxes. The policy of the Act is to enable the government "to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference." *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045–46, 40 L.Ed.2d 496 (1974). The Act provides that with certain express exceptions, "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed." 26 U.S.C. § 7421.

The assessment was made pursuant to Section 6862, authorizing jeopardy assessments for taxes other than income, estate, gift and excise taxes. Because Section 6671 provides that penalties shall be assessed and collected in the same manner as taxes, the plaintiffs' effort to enjoin the defendant would be barred by Section 7421 unless one of the exceptions is applicable.

There are both judicial and statutory exceptions which allow persons to bring suit under special circumstances. The judicially created exception to the Act allows a taxpayer to obtain an injunction if he proves that (1) the government cannot prevail under any set of circumstances, and (2) irreparable injury would otherwise occur. *Enochs v. Williams Packing and Navigation Co.,* 370 U.S. 1, 6–8, 82 S.Ct. 1125, 1128–30, 8 L.Ed.2d 892, *reh'g denied,* 370 U.S. 965, 82 S.Ct. 1579, 8 L.Ed.2d 833 (1962). The plaintiffs filed a motion for temporary restraining order which was heard in this court on April 19, 1985. Joseph P. Gorman, John Grandbouche, and Steve Wagner testified at that hearing. These witnesses described the operations of the NCBA/NCE, and their individual roles as agents for the "members" in buying and selling gold and silver, and the payment of creditors pursuant to direction of the members. Mr. Grandbouche testified that the members must pay an annual membership fee of $280.00 for the first year, and $160.00 for each year thereafter, and that a percentage charge is made for each financial transaction.

The witnesses also testified that bank accounts are maintained in the name of NCBA/NCE, and that members' money is deposited into the association accounts with coded accounting to avoid the name identification of the members. The seizure of all of the books and records, through the execution of the search warrants, had prevented these agents and others from conducting the business of the NCBA/NCE and had, of course, also prevented the carrying out of members' transactions and the recovery of funds and property on deposit with the association. In the course of the

hearing, counsel for the government agreed that the items which could be seized under levies would not include accounting records, or anything else which would not be considered subject to sale by the IRS on tax liens.

While the plaintiffs did establish substantial injury, probably irreparable, to the association and its members from the seizures made pursuant to the assessment, this court did not grant any emergency relief because of an uncertainty with respect to the legal status of the NCBA/NCE, and the very substantial legal question of jurisdiction.

The NCBA/NCE has been the subject of other litigation in this court, and in the Tenth Circuit Court of Appeals. A grand jury subpoena was served on the First National Bank of Englewood, Colorado for the production of any and all records pertaining to the NCBA, and the National Unconstitutional Tax Strike Committee (NUTS). John Grandbouche and others moved to quash that subpoena as an infringement on first amendment rights. Chief Judge Finesilver of this court held that they lacked standing to make the challenge. That conclusion was reversed by the Tenth Circuit Court of Appeals in *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115 (10th Cir.1983), in which the court held that the petitioners had made a sufficient showing of a potential first amendment violation to warrant an evidentiary hearing to determine whether enforcement of the subpoena would likely chill associational and political rights protected by the Constitution. No such hearing was ever held, and the subpoena was not enforced. It should be emphasized that the appellate court held only that the petitioners had standing to make their claims, and that an evidentiary hearing was required to consider them. No adjudication of the status of the organization was made.

In the course of litigation commenced in the federal district court in Oklahoma by Madill Bank & Trust Company and the Farmers Home Administration in connection with loans, discovery was undertaken to determine if collateral pledged as security was being disposed of through the NCE. A discovery dispute then arose in this court in the enforcement of subpoenas directed to "Larry D. Martin, National Commodity Exchange" and "National Commodity and Barter Association" for testimony and documents. The end result of that dispute was that Judge Weinshienk of this court held Mr. Martin and Mr. Grandbouche in contempt of court for the failure to obey those subpoenas. The court of appeals affirmed in *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611 (10th Cir.1983), and made the following conclusions with respect to the NCE:

> In Colorado, an unincorporated organization formed to conduct business for profit is characterized as a partnership. *See Fisher v. Colorado Central Power Co.*, 94 Colo. 218, 29 P.2d 641, 642 (1934). Under the Uniform Partnership Act, which is in effect in Colorado, "every partner shall at all times have access to and may inspect and copy any [partnership records]." Colo.Rev.Stat. § 7–60–119. The NCE has the appearance of a business operated for profit. It charges for its services; it buys and sells silver and gold; it assumes the risk of declines in the market prices of these commodities and recoups its losses from account holders when prices increase. Even if the NCE is a non-profit unincorporated association, Colorado law permits suit to enforce "against it a substantive right," and outsiders may reach "the joint property of the associates, and the separate property of any individual member" over whom the court has jurisdiction. With respect to the right of access to records of a nonprofit unincorporated association, ordinary agency principles apply. Members of the organization's governing body, if there is one, control the access to records of the organization. *See United States v. Fleischman*, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950). If the organization has no governing structure at all, all members or participants have equal access to the organization's records, as is the rule for partnerships.

An important purpose underlying shifting the burden of production is to place on the person most likely to have access to the relevant evidence the obligation of bringing it forward. The record in this case highlights the utility of this rule. The only relevant document in the record explaining the operation of the NCE declares explicitly that the NCE is set up to avoid scrutiny by the Internal Revenue Service and others and to provide a bill paying service that leaves no paper trail through the Federal Reserve System (even NCE's cancelled checks representing payment of bills for its account holders are destroyed after 90 days). To avoid taxation and scrutiny from any source, Grandbouche designated an "unincorporated association" apparently with no formal governing structure, oral irrevocable delegations, and no paper records (except the "Common Law" contract, the ledger showing gold and silver balances, and checks that cleared within the last 90 days). The NCE, then, is an organization designed to operate in secrecy, to leave no paper trail, and to avoid service of process. Given this emphasis on secrecy, requiring Grandbouche to present specific evidence of his inability to control the records is particularly justified.

*Id.* at 615–17 (footnotes omitted).

The plaintiffs contend that there is both an invalid assessment and a wrongful levy. The assessment is a jeopardy assessment based on 26 U.S.C. § 6700 which provides for the imposition of a penalty as follows:

**(a) Imposition of penalty.**—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in any entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a. penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.

The plaintiffs contend that the NCBA/NCE cannot be both the "entity" and the "person" under this statute. Thus, the argument is that the tax shelter cannot also be the promoter. The legislative history of the statute indicates that the introduction of Section 6700 (together with an injunctive remedy under Section 7408, which is not at issue here) was based on a need to "target the promoters, organizers, and salesmen of abusive tax shelters." *United States v. Buttorff,* 563 F.Supp. 450, 452 (N.D.Tex.1983) (citing *S.Rep. No.* 97–494, 97th Cong., 2d Sess. 266 (1982) U.S. Code Cong. & Admin.News 1982, p. 781). Due to its recent enactment, few courts have been called upon to interpret and apply Section 6700. However, cases which have dealt with various provisions of the statute have chosen not to interpret it more broadly than its terms prescribe. *United States v. Turner,* 601 F.Supp. 757, 759 (E.D.Wis.1985). *See also United States v. Savoie,* 594 F.Supp. 678 (D.La.1984); *United States v. White,* 583 F.Supp. 1118 (D.Minn.1984); *Buttorff,* 563 F.Supp. at 450. Although primarily dealing with injunctions imposed as a result of violations of Section 6700, these cases have held only individuals liable under the statute, not the entity or shelter which was promoted.

The plaintiffs' argument would have merit if the association were separate and distinct from its members, and the transac-

tions were at arms-length. That is not this case. The suggested analogy of a bank with a debtor-creditor relationship to its depositors is not apt. Indeed, the very purpose of this plan and organization is to permit persons to engage in financial transactions without the use of a commercial bank and the attendant "paper trail" which would permit IRS investigation of their activities. While the association has been characterized as a group calling for tax reform, it is apparent that there is a very substantial basis for the government's belief that tax avoidance is the objective. It is also apparent that this objective can be furthered by the failure to use any recognizable legal structure, preferring the amorphous label of "voluntary association."

The Tenth Circuit Court of Appeals was correct in its conclusion in *Heinold, supra,* that under Colorado law a voluntary association is treated as a partnership for most purposes. Colorado has enacted the Uniform Partnership Law under which every partner is an agent of the partnership for the purpose of its business and the acts of the partners are binding on the partnership. C.R.S. § 7–60–109. That includes wrongful acts under the following provision:

> **7–60–113. Partner's wrongful acts— liability.** Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his partners, loss or injury is caused to any person, not being a partner in the partnership, or *any penalty is incurred,* the partnership is liable therefor to the same intent as the partner so acting or omitting to act. (emphasis added).

Additionally, partners are jointly and severally liable for the debts and obligations of the partnership. C.R.S. § 7–60–115.

■ Applying these legal principles to the facts as they appear in the government's assertions in the *Bergsgaard* affidavit, and the evidentiary record made in the course of this litigation, there is support for the government's position that member-

ship in the NCBA/NCE and active participation in these activities constitute the promoting of abusive tax shelters for which a penalty may be assessed properly, and that the penalty becomes the obligation of the participating members as partners, and the NCBA/NCE as the partnership. The IRS does not know the identity of the participating members. Accordingly, it has proceeded against the partnership to make the assessment, and that appears to be appropriate.

■ The plaintiffs have challenged the government's assumption that there are 20,000 members and, therefore, that a penalty of $2 million can be assessed. This court cannot address that issue because the membership lists have not been provided, and the plaintiffs have insisted that they have a constitutional right to privacy. While the limits of a constitutional right to privacy have not been clearly defined in the law, there is no basis for the contention that bald assertions of property rights and interests can be accepted anonymously and without any opportunity for challenge under the ordinary procedural mechanisms of the adversary system of adjudication. The amount of the assessment is questionable, but on the basis of the record presented, this court cannot say that the government cannot prevail under any set of circumstances. Accordingly, the plaintiffs have not established the exception to the Anti-Injunction Act recognized in the *Enochs* case, and the plaintiffs' motion for summary judgment must be denied.

The claims of individual plaintiffs presented in this civil action are brought pursuant to 26 U.S.C. § 7426(a)(1), which provides:

> (1) **Wrongful levy.**—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such

action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

In this case, the levy is based on the promoter penalty assessment and, as previously indicated, there is the assumption that the individual members participating in the activities of the association have subjected themselves to the penalty by the conduct proscribed in Section 6700 of the Internal Revenue Code. That, of course, is an assumption which may be rebutted, and persons claiming that their property has been unlawfully seized have the opportunity to come forward under the jurisdiction conferred by Section 7426 to prove that they have property which has been made subject to the levy, and that they are not properly subject to the penalty assessment because they have not violated Section 6700. In that regard, some of the named plaintiffs in this civil action have sought to represent themselves, pro se, and declined representation by appearing counsel. Some of these same persons have filed another civil action, Civil Action No. 85–M–2734, in which they assert claims under Section 7426(a)(1) through their counsel, Cecil A. Hartman. While, for purposes of computing time for the filing of the action they may be recognized as having asserted such claims originally in this case, it is no longer correct procedurally for them to be considered as parties in this civil action, and they are, accordingly, dismissed from it.

The government moved to dismiss the Section 7426 claims by contending that the NCBA/NCE owns the assets which were made subject to levy and seizure. Reliance for that contention is placed on *Glenn Justice Mortgage Co. v. Trust Nat'l Bank of Fort Collins*, 592 F.2d 567 (10th Cir.1979), which involved a bank and the legal conclusion that the bank takes title to general deposit accounts. As previously noted, the NCBA/NCE is not in the position of a bank, and the government's argument in this respect is wholly inconsistent with the assertion that the association can be penalized for the prohibited promotions under Section 6700. The more appropriate analysis is that the assets are partnership assets subject to the penalties imposed by the conduct of the partners in the promoting of the plan and organization which constitutes the tax shelter.

This court previously denied jurisdiction for expedited judicial review, under 26 U.S.C. § 7429(b), upon the conclusion that such review is limited to consideration of reasonableness of the jeopardy assessment and reasonableness of the amount assessed, and that in this civil action both the associations and individuals have made a broader attack on the authority of the Internal Revenue Service to make the assessment on the subject property. That holding has no effect on claims made under 26 U.S.C. § 7426(a).

Upon the foregoing, it is

ORDERED that the plaintiffs' motion for summary judgment is denied, and it is

FURTHER ORDERED that the defendant's motion to dismiss is granted with respect to all claims other than claims asserted pursuant to 26 U.S.C. § 7426, and it is

FURTHER ORDERED that Joseph P. Gorman, Sandra L. Gorman, Marlene Aspinall and Dean Salisbury are withdrawn from this action, and it is

FURTHER ORDERED that on or before February 10, 1986, the plaintiffs shall file an amended complaint clearly setting forth such claims as they may wish to assert under 26 U.S.C. § 7426.