UNITED STATES of America, Plaintiff,

v.

Charles D. SHUGARMAN, Albert Y. Webb, James R. Dubose, Sr., James R. Dubose, Jr., and Carlisle C. Hamilton, Defendants.

Civ. A. No. 84–64–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

Oct. 4, 1984.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, Va., Larry Meuwissen, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

Scott McLarty, Athens, Ga., Robert A. Blount, Newport News, Va., for defendants.

## MEMORANDUM OPINION

CLARKE, District Judge.

This matter comes before the Court on the Government's request for permanent injunctive relief against the defendants. The government has submitted the following proposed findings of fact, which the defendants have agreed shall be the basis for the court's opinion and order. Accordingly, the Court adopts the proposed findings as follows:

## FINDINGS OF FACT

(a) The defendants have at some time all been active as organizers, promoters, agents or leaders of a program, plan, arrangement or entity known as the "Virginia Patriots."

(b) The Virginia Patriots are a local affiliate of a national program, plan, arrangement or entity known as the "Patriot Network."

(c) The Virginia Patriots maintained an office in 1983 at 10202A Warwick Boulevard, Newport News, Virginia, 23602.

(d) The Virginia Patriots, as the local affiliate of the national Patriot Network, make available materials, some of which have been developed and promoted by one Robert Barnwell Clarkson of Anderson, South Carolina. These materials deal with the Constitution of the United States, the United States Code (particularly the Internal Revenue Code) and various statutory and case law excerpts. Clarkson personally attended and spoke to a promotional meeting for the "Virginia Patriots" at the Western Steer Restaurant, 12652 Jefferson Avenue, Newport News, Virginia, on December 15, 1982.

(e) Charles D. Ray of Augusta, Georgia, has been active in the national organization of the Patriot Network. Ray made personal appearances with members of the Virginia Patriots in August, 1983.

(f) The advocacy of the defendants through the "Virginia Patriots" asserts the proposition that wages and salaries are not taxable under Section 61(a)(1) of the Internal Revenue Code but rather that they are exchanges of property under Section 61(a)(3) of the Internal Revenue Code thereby avoiding tax consequences on wages received.

(g) These theories were at some time presented through the use of a videotaped presentation by Charles Ray that was played at certain regularly conducted meetings held to recruit members into the "Virginia Patriots." This taped presentation is approximately two hours in length and contains numerous arguments concerning the Federal Reserve System and the taxation of wages. The videotape presentation asserts, for example, that no one paid income tax on wages prior to World War II. The presentation explains, step by step, how an individual should prepare a W–4 form (employee's withholding allowance claim) in order to be exempt from income tax withholding. The presentation promises that members will be shown how to legally stop paying federal income tax on wages forever.

(h) At these meetings, the video tape presentation was followed by further discussion by the defendants. The oral promotion was sometimes reinforced by circulation of copies of federal income tax refund checks purported to have been paid to "Patriots" who had followed the Patriot Network plan. On some occasions, one or more of the defendants or other persons associated with the Virginia Patriots have made an oral presentation substantially similar in content to the videotape of Charles Ray.

(i) At such meetings persons in attendance were invited to join the "Virginia Patriots" for a $200.00 fee. Members also paid monthly fees of $25.00. Once an individual has joined the organization, the defendants provided (usually for a $5.00 fee) sample tax returns or sample amended tax returns (Form 1040X) about which the members were advised regarding re-copying and filing.

(j) The tax returns and amended tax returns described in Paragraph (i), above, involve reporting an individual's wages as gross receipts or sales, and an offsetting deduction is taken for "cost of goods sold." The cost of goods sold deduction is sometimes determined using the individual's wages as a starting point and deriving an amount which, according to the "Patriots" tax return instructions, will be "enuf (sic) to reduce tax liability to 0."

(k) Defendants have advised members regarding the filing of a Form W–4. If the employer refuses to accept the W–4, members are advised by the defendants concerning legal remedies available with respect to the employer.

(*l*) The defendants have also advised members with respect to their legal recourses regarding erroneously or illegally collected taxes or penalties pursuant to 26 U.S.C. § 7422 (tax refund actions) to contest, among other things, penalties imposed by Section 6682 of the Internal Revenue Code (26 U.S.C.) for a false or fraudulent withholding statement.

(m) The "Patriot Network" Membership agreement used by the defendants for the Virginia Patriots expressly states that the purported benefits of membership are contingent upon regular payment of dues by the member.

(n) The defendants contract under the terms of the membership agreement to provide a legal assistance fund and other advisory services as needed to members who encounter tax difficulties. The defendants thus know or have reason to know that the course of action they urge upon their members is false or fraudulent and is likely to result in adverse tax consequences to members who follow such advice.

(o) Defendants nevertheless have solemnly assured members that the courses of action they advocate are legal and have thus induced citizens to join and pay fees to the defendants for false and fraudulent advice that leads directly to the filing of false or fraudulent tax returns by members of the defendants' organization.

(p) Defendants' contention that they advocate civil disobedience as a means to argue their theories before the courts is not credible. Defendants do not warn prospective members that the courses of action they advocate have been universally rejected and held to be unlawful by the courts. Defendants do not inform prospec-

tive members that they are virtually certain to suffer civil and/or criminal penalties for following the defendants' advice. They do not inform prospective members that they are virtually certain to lose any civil action brought to contest penalties assessed by the Internal Revenue Service for filing the type of tax returns suggested by the defendants.

(q) Defendants, in fact, do more than suggest the filing of a particular type of return; they actually prepare the return, but have the member re-copy it in his own hand before filing it. For this service, defendants generally charge a fee of $5.00 per return or for an amended return. The stipulations show that defendants Charles Shugarman and James R. DuBose, Sr. have actually prepared such returns and charged such fees. The other defendants have acted as promoters of this tax service and are likely to engage in the similar conduct if they are not precluded from doing so. None of the defendants appear to have any proper training for the preparation of lawful tax returns nor does there appear to be, at this time, any likelihood that they would conduct themselves in a lawful manner in the business of preparing federal income tax returns.

(r) Patriot Network materials made available to members by the defendants are replete with directives for abusive and contemptuous conduct against personnel of the Internal Revenue Service. Such directives are plainly calculated to cause interference with the proper administration and enforcement of Government personnel. Defendants have actively encouraged members to engage in such conduct and have provided specific instructions making it more likely that members will engage in such conduct. Some of these materials describe in considerable detail ways to write abusive and threatening letters. Others describe the filing of common law liens. Defendants have also discussed at meetings the creation of lists of Internal Revenue Service personnel to be distributed or published.

(s) The Form W-4 form described in paragraph (g) above is used by an employee to inform his employer of the number of withholding exemptions he claims in accordance with 26 U.S.C. Section 3402(f). Defendants generally advise their members to claim an excessive number of exemptions or to claim complete exemption from income tax withholding on wages under 26 U.S.C. Section 3402(n). The principal legal remedy that members are advised and assisted to take against an employer refusing to accept such a W-4 form is to sue the employer, thereby causing the employer to incur expense which may coerce the employer into acceptance of a false W-4 form.

(t) Defendants actively encourage litigation against the Government to contest various civil tax penalties assessed against members as a result of following the patriot plan in one or more respects. Typically, such actions are brought as tax refund actions and the defendants have prepared pleadings and furnished other assistance in the filing of such actions. In particular, the evidence shows that defendant Shugarman was actively involved in causing actions to be filed in this district by Thomas E. Scull and others (Civil Action Nos. 83-132-NN, 83-133-NN and 83-522-NN) in which summary judgment was granted in favor of the United States on April 10, 1984. (Reported at 84-2 U.S.T.C. 9529). The Patriot's purpose behind such litigation is not for the sake of advancing any serious, legitimate legal argument, but rather to tie up the courts and Government agencies and to cause them unnecessary expense.

(u) None of the defendants appear to have had any formal training in the law by any recognized institution. Charles D. Shugarman has a certificate purporting to make him a member of the "Patriot Bar Association" dated September 5, 1983 and signed by Robert B. Clarkson, II as "Chairman." This certificate attests to nothing more than the fact that Shugarman may have passed some test showing knowledge of the contents of various materials developed by Clarkson. Some of the Clarkson materials were introduced into evidence

and the Court finds the contents of these materials to be sham, false, scandalous and impertinent. Defendants are plainly not qualified to provide legal advice of any sort, but it appears likely that they will continue to sell their bogus advice to the detriment of the courts and other Government agencies and also to the grave detriment of those naive or corrupt enough to be willing to follow such advice.

## CONCLUSIONS OF LAW

Jurisdiction over this action is conferred by 26 U.S.C. Sections 7402 (authorizing the district courts to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws), 7407 (authorizing district courts to enjoin tax return preparers engaged in fraudulent or deceptive conduct that substantially interferes with the proper administration of the Internal Revenue laws), and 7408 (authorizing district courts to enjoin conduct subject to penalty under 26 U.S.C. § 6700. Section 6700 imposes a penalty upon persons who organize plans or arrangements that make or furnish statements regarding the allowability of any deduction or the excludability of any income that the person knows is false or fraudulent). Jurisdiction also lies under 28 U.S.C. § 1345, which provides for district court jurisdiction in all civil actions commenced by the United States.

The defendants here do not dispute that the Internal Revenue Code authorizes the issuance of injunctions in cases where individuals are engaging in certain proscribed conduct. Their argument is, rather, that the Government's proposed injunction in this action violates their first amendment rights to free expression and free association.

The defendants attack the Government's proposed Order of Injunction on two theories: first, that the Order inadequately distinguishes between protected and unprotected activity under the first amendment and thus is unconstitutionally overbroad; and second, that it is an impermissible prior restraint on the speech and associational rights of the defendants. The Court in this opinion addresses each claim separately.

■ It is settled beyond dispute that the first amendment protects an individual's right to disagree with the law and to advocate the violation of a law. There is no protection, however, for speech or advocacy that is directed toward producing imminent lawless action. As the Supreme Court wrote in *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969):

> (T)he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

*Id.* at 447, 89 S.Ct. at 1829. Although the defendants argue that their conduct is merely advocacy of unlawful activity and is not directed toward producing lawless action, the record and the findings of fact demonstrate otherwise. Arguing for or advocating changes in the existing tax law is certainly protected activity; even advocating the violation of the tax laws is constitutionally sanctioned. These defendants, however, have gone beyond that permissible stage. They are actually breaking the law themselves and instructing others on how they, too, can break it. The Supreme Court has noted this distinction:

> The mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.

*Brandenburg v. Ohio*, 395 U.S. at 448, 89 S.Ct. at 1830, *quoting Noto v. United States*, 367 U.S. 290, 297–98, 81 S.Ct. 1517, 1520–21, 6 L.Ed.2d 836 (1961).

■ The Court finds that the defendants in this case are not engaged in mere advocacy but in advocacy that is "directed to producing imminent lawless action." Such advocacy is not protected by the Constitution.

In considering the scope of the first amendment protection for the speech and conduct of these defendants, the Court also considers that the speech is of a commercial nature. The defendants have stipulated that the Virginia Patriots charge fees for their service of providing false and fraudulent tax advice. Moreover, members who wish to receive their continuing services are required to pay regular dues. While the protection of the first amendment does extend to commercial speech, such speech may be regulated to safeguard the State's interest in insuring the unimpaired flow of truthful and legitimate commercial information. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976). The Supreme Court noted in *Central Hudson Gas & Electric v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), that commercial speech, "although meriting some protection, is of less constitutional moment than other forms of speech."

The next consideration of the Court in assessing the first amendment consequences of abridging the defendants' behavior in this case is the extent of "nonspeech" elements in the course of conduct. The Supreme Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on first amendment freedoms. *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

In *United States v. O'Brien, supra,* the defendant burned his Selective Service Registration certificate in front of a large crowd in an attempt to influence others to adopt his anti-war beliefs. The Supreme Court held that while he had a right to oppose the Selective Service system and the Universal Military Training and Service Act, it did not follow that the unlawful destruction of his registration certificate was a constitutionally protected activity. The Court rejected his contention that his act of burning was "symbolic speech." *Id.* at 376, 88 S.Ct. at 1678.

The conduct of these defendants is not entirely "speech." They assist in the preparation of fraudulent tax returns and sell plans that instruct taxpayers how to avoid federal income tax payment. They assist in the filing of frivolous lawsuits and instruct members on ways to engage in abusive and contemptuous conduct clearly calculated to disrupt and interfere with the proper administration of the internal revenue laws. Such conduct is more adequately characterized as "nonspeech." Any incidental suppression of free expression that may result from enjoining the defendants' conduct in this case is sufficiently justified by the overriding interest of the government in securing voluntary citizen compliance with the tax laws.

The final, and perhaps most important, consideration in determining the extent of the defendant's first amendment right to engage in this form of speech, is that the arguably protected message of the defendants is untruthful. The defendants teach that wages and salaries are not taxable income and that their members may lawfully stop paying tax on wages forever. They advise their members to force false and fraudulent wage withholding forms on their employers. Advice such as this, which is plainly fraudulent and untruthful, is not entitled to constitutional protection. In the words of the Supreme Court,

> (T)here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it (*citing cases*) or commercial speech relating to illegal activity.

*Central Hudson Gas & Electric,* 447 U.S. at 563–64, 100 S.Ct. at 2350.

The Court holds that the first amendment does not prevent the issuance of this injunction on three grounds: first, the defendants' advocacy is directed toward producing imminent lawless action; second,

the conduct is a mixture of speech and nonspeech and the government has a strong interest in regulating the nonspeech elements; and finally, the speech amounts to a misleading commercial message more likely to deceive the public than to inform it.

■ The defendants argue that the proposed injunction would violate their right to free association. The Court is not persuaded by this argument; the individual defendants are free to associate with whomever they wish, so long as they do not violate the law while they are freely associating. The case cited to support this argument of the defendants *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir.1980), is inapposite. In *Familias Unidas*, the Fifth Circuit held unconstitutional a statute empowering judges to demand public disclosure of membership of organizations thought to be engaged in activities that interfered with the operation of public schools. Because the right of privacy in group associations may be indispensable to the preservation of freedom of association, the Court struck down the statute. In this case, however, no associational rights are even involved. The right to engage in unlawful activity is neither indispensable nor incidental to the defendants' right to freedom of association. Moreover, the injunction will not interfere with the organization's right of privacy.

■ The second argument which the defendants advance in opposing the proposed injunction is that the injunction seeks to impose a prior restraint on the protected political expression of the defendants.

The Court has already concluded that the first amendment does not protect the activity against which an injunction is being sought in this case. In a similar case where the government sought to enjoin the defendant's promotion and sale of an abusive tax shelter, the District Court wrote,

> Having found that the alleged abuses do not fall within the protection of the first amendment, the Court need not wrestle with the appropriateness of a prior restraint ....

*United States v. Buttorff*, 563 F.Supp. 450, 453 (N.D.Texas 1983).

This Court likewise will not "wrestle" with the appropriateness of a prior restraint. An injunction that the Court may issue would not restrain any protected political activity. The defendants may continue to advocate or work toward changing the federal tax laws. They may not, however, continue to break those laws.

### Conclusion

The Court is of the opinion that a permanent injunction should issue according to the terms set out in the accompanying Order entered this same date.

### ORDER OF PERMANENT INJUNCTION

In accordance with a Memorandum Opinion rendered simultaneously herewith, it is ORDERED that:

Defendants Charles D. Shugarman, Albert Y. Webb, James R. DuBose, Sr., James R. DuBose, Jr. and Carlisle C. Hamilton, their agents, servants, employees, attorneys and all those in active concert or participation with them are enjoined from directly or indirectly:

1. Inducing, aiding or abetting the filing of false or fraudulent wage withholding exemption forms.

2. Inducing, aiding or abetting the filing of false or fraudulent federal income tax returns or amended returns.

3. Inducing, aiding or abetting abusive or contemptuous conduct directed against personnel of the Internal Revenue Service or Court personnel, including the filing of "common law liens" or any other instrument purporting to encumber real or personal property of such personnel without lawful authority under due process of law.

4. Inducing, aiding or abetting the institution of lawsuits against employers in an attempt to coerce acceptance of a false or fraudulent wage withholding exemption form.

5. Inducing, aiding or abetting the institution or prosecution of any civil action in any court in the United States based upon the claim that wages or salaries or other compensation for labor or services are not subject to Federal income tax.

6. Organizing, assisting in the organization of, selling or otherwise promoting any plan or arrangement based upon the false premise that wages, salaries or other compensation for labor or services are exempt from Federal income taxation or based upon any other false or frivolous contentions regarding Federal tax law.

7. Advertising, marketing, selling or otherwise distributing any documents or other information to be used by taxpayers to avoid the payment of or to obtain the refund of Federal income taxes based on the false proposition that wages, salaries or other compensation for labor or services not specifically excluded from taxation under Title 26 United States Code are not taxable income.

8. Preparing or assisting any individual by any means in the preparation of false or fraudulent Forms 1040, 1040X, W–4 and any other tax returns or any other false or fraudulent form, return or declaration claiming that the taxpayer is exempt from Federal taxation or entitled to excessive multiple withholding allowances so as to reduce such taxation.

9. Preparing for compensation or employing one or more persons to prepare for compensation any return of Federal income tax or any claim for refund of Federal income tax for any person other than:

a. himself,

b. his regular and continuous employer, or

c. ·a person for whom he acts as a fiduciary.

Preparing a return includes providing individualized "samples" of returns to be recopied as well as the preparation of any schedule or a sample of any schedule to be made a part of a return.

10. Making or furnishing a statement in connection with organizing, assisting in the organization of, selling or participating in the sale of an interest in a partnership, entity, investment plan or any other plan or arrangement

a. with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the defendant knows or has reason to know is false or fraudulent as to any material matter; or

b. as to the value of property or services directly if the value directly relates to the amount of a deduction or credit for Federal income tax purposes or if the value so stated exceeds 200 percent of the correct value.

IT IS SO ORDERED.