**Alfred ABDO, Jr., d/b/a American Tax Planning Company, Plaintiff and Counterclaim Defendant,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant and Counterclaim Plaintiff.**

No. CIV.1:01–CV–00098.

United States District Court, M.D. North Carolina.

Nov. 8, 2002.

Jonathan Fonati Koffa, Zebulon, NC, for Plaintiff.

Dara B. Oliphant, U.S. Department of Justice Tax Division, Evan J. Trissell, Hilarie Snyder, U.S. Department of Justice, Washington, DC, for Defendant.

Alfred Abdo, Jr., Winston–Salem, NC, Pro se.

*MEMORANDUM OPINION*

BULLOCK, District Judge.

Plaintiff and Counterclaim Defendant Alfred Abdo, Jr. ("Abdo"), a tax return preparer, filed this action *pro se* on January 24, 2001, seeking declaratory and injunctive relief on behalf of his clients in order to obtain refunds allegedly owed them from the Internal Revenue Service ("IRS"). The IRS filed a motion to dismiss on March 29, 2001, and an answer and counterclaim on May 15, 2001, seeking to permanently enjoin Abdo under Internal Revenue Code ("I.R.C.") Sections 7402, 7407, and 7408 from acting as an income tax return preparer and from other related activities. After entering a preliminary injunction against Abdo on May 25, 2001, this court dismissed Abdo's complaint with prejudice on August 27, 2001. The IRS now moves for summary judgment on its counterclaim.

## FACTS

Abdo is a tax return preparer and adviser doing business as American Tax Planning Company ("ATP") in Winston–Salem, North Carolina. Abdo started ATP in 1980 with services including auditing previously filed tax returns and filing amendments if necessary, tax advice, and related tax services.

Abdo has a post-graduate education and is licensed in real estate, securities, and life insurance. Before coming up with his tax programs, Abdo was licensed by the National Association of Securities Dealers ("NASD") as a securities representative and salesman. Abdo was suspended and fined $25,000.00 in 1992 by the NASD for violating suitability requirements and guaranteeing repurchase of clients' interests if they were unsatisfied. To date Abdo has not paid the fine and remains suspended.

In an effort to attract more clients, Abdo began to advertise a new program based on "voluntary compliance" in 1997. In short, this program was grounded on Abdo's belief that only those deriving income from an alcohol-, tobacco-, or firearms-related activity ("ATF") were subject to federal income tax. Abdo has backed his belief in this assertion with his own actions: since he has not earned any income from ATF activities Abdo has not paid federal income tax nor filed a federal income tax return since at least 1990. Abdo also attempted to support his "voluntary compliance" argument by citing *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), a 1920 United States Supreme Court case. Abdo claims that this case stands for the proposition that, since labor is exchanged for wages, taxpayers' wages are not a gain and therefore are not taxable. Abdo has prepared tax returns using this argument for four couples and has convinced at least two other married couples to stop paying their taxes altogether.

In exchange for a monthly fee, Abdo would prepare W–4 forms for each client based on his "voluntary compliance" argument. He further promised to reimburse clients for any IRS-related expenses having to do with their returns, up to $10,000.00. Clients were then instructed to choose a voluntary amount to give to the Government, and not surprisingly this amount would be zero. It was based on this information that Abdo would then submit the W–4 forms to the client's employer with up to fifteen exemptions listed. When the employers accepted these forms, Abdo's clients would no longer have taxes withheld and would stop paying taxes.

Abdo had hopes of attracting numerous tax clients to this program through client referrals. Through this program Abdo hoped to attract the "masses" and let them "keep 100% of their earnings." (United States Mot. Summ. J., Ex. C, Jackson Dep. Ex. 16.) When the "voluntary compliance" program failed to catch on, Abdo created a new program: the "Tax Return Audit Challenge Program."

Abdo based this program on I.R.C. Sec. 3121 and offered a version of a money-back guarantee. Under this program Abdo guaranteed $200.00 to any taxpayer whose income tax return is audited by ATP and no refund is identified. Abdo would charge an initial fee and fifty per cent (50%) of any refund received from the IRS or any state. For each amended return prepared by Abdo, the relevant section of the I.R.C. or court decision was cited. Generally, Abdo based the returns under this program on his Section 3121 argument (discussed at greater length *infra*) that Social Security wages withheld are not taxable income.

Although Abdo primarily asserted the Section 3121 argument under this program, he also continued to assert his "voluntary compliance" position. New clients were asked to sign a number of forms initially, including a power of attorney, non-disclosure, and "Voluntary Compliance Declaration." Abdo even promoted a new referral based system for select clients in which clients would receive fees for all direct and indirect (secondary) referrals.

Abdo filed more than 168 amended federal income tax returns based on this Section 3121 argument.[1] Initially, some clients enrolled in the "Tax Return Audit Challenge" did receive tax refunds after

---

**1.** These returns were filed by or on behalf of seventy different taxpayers. The total amount claimed on these 168 returns is $242,296.00.

(Evid. Mat. Support United States Mot. T.R.O., Ex. D, Gunnell Decl. ¶ 4.)

submissions to the IRS.[2] This was short-lived, however, as the IRS soon began denying returns submitted by ATP and Abdo which cited I.R.C. Sec. 3121 exclusions. The IRS then began sending frivolous-filing letters to Abdo's clients. These letters stated that the taxpayer had filed a frivolous return and would be assessed a penalty of $500.00 unless the return was immediately withdrawn.

In the face of these letters and warnings from the IRS, Abdo continued to assert his program and his arguments. After the IRS notified Abdo's clients they would avoid penalties by withdrawing their returns, Abdo sent his clients e-mail messages describing these warnings and offers from the IRS as lies and "intimidation techniques." (United States Mot. Summ. J., Ex. D, Rose Dep. Ex. 16.) He also warned his clients that if they withdrew their returns they would be in breach of contract with ATP. Abdo even scolded one client who had stopped paying taxes based on Abdo's advice for being concerned with his non-payment and non-filing activities.

After the IRS began investigating Abdo, it sent him a letter asking Abdo to produce a list of his clients, which he is required by law to keep and produce on request. He failed to comply. When Abdo met with the investigators in January 2001, he was asked once again to provide the list for inspection by the IRS and once again he refused. Although Abdo cites computer problems as the reason for the non-compliance, he has not produced any evidence to support this claim.

Instead of complying with the request, Abdo initiated this lawsuit against the IRS seeking refunds on behalf of his clients. The Government counterclaimed. On May 25, 2001, this court entered a preliminary injunction on behalf of the IRS enjoining Abdo. The injunction prohibited Abdo from (1) preparing or filing individual tax returns that contained a deduction, exemption, or exclusion from wages or gross income any Social Security taxes withheld or paid; (2) guaranteeing the payment of any tax refund or the allowance of any tax credit; (3) falsely claiming or representing himself as a certified public accountant; (4) threatening to sue or otherwise intimidating his clients if they cooperated with the United States; and (5) disseminating materials or making statements that have the tendency to make the public believe any of Abdo's tax-related arguments based on voluntary compliance, ATF, or Section 3121. Furthermore, the court ordered Abdo to produce his client list for immediate inspection by the IRS. On August 27, 2001, this court dismissed Abdo's suit against the IRS with prejudice.

Although Abdo complied with the order to produce the client list, he continued to assert his Section 3121 argument. In October 2001, Abdo sent a hearing-request letter on behalf of a client to the IRS—four months after agreeing to the preliminary injunction—in which he asserted his Section 3121 argument. Furthermore, in his deposition, Abdo remained steadfast in his belief that his Section 3121 argument is valid and legal and that he disagreed with this court's position. Although he has conceded that others who have used similar arguments are in jail for failing to pay their taxes or file returns, Abdo testified that he presumed the judges misunderstood the law or that the defendants did not raise the right arguments.

The Government brought this motion for summary judgment on its counterclaims to enjoin Abdo under I.R.C. Secs. 7402(a), 7407 and 7408. The Government is seeking a permanent injunction against Abdo

**2.** The IRS issued refunds in eleven (11) of those amended returns.

under these sections barring him from preparing tax returns or other tax documents, advising clients on tax matters, and promoting abusive tax schemes.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## I. *Violations of Sections 7407 and 7408*

The United States avers in its counterclaim that Abdo violated I.R.C. Secs. 7407 and 7408. Both sections authorize a court to issue an injunction if the defendant is found to have violated certain sections of the I.R.C. or engaged in certain behavior and the injunction is appropriate to prevent further conduct. I.R.C. Sec. 7407(a) authorizes the United States to seek to enjoin a tax-return preparer from further engaging in conduct described in Section 7407(b). Section 7407(b) in turn authorizes injunctions against tax return preparers who, among other things, (1) engage in any conduct subject to penalty under Section 6694 or Section 6695; (2) misrepresent their eligibility to practice before the I.R.S.; (3) guarantee the payment of any tax refund; or (4) engage in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the Internal Revenue laws. I.R.C. § 7407(b).

The United States also avers that Abdo violated I.R.C. Sec. 7408, which provides that the United States may commence an action in a district court to enjoin any person from engaging in conduct subject to penalty under Sections 6700 or 6701 of the I.R.C. I.R.C. Sec. 7408(a). The court may grant such relief if it finds "(1) that the person has engaged in any conduct subject to penalty under section 6700 ... or section 6701 ..., and (2) that injunctive relief is appropriate to prevent recurrence of such conduct." I.R.C. Sec. 7408(b).

## A. *Section 6694(a): Frivolous Positions by Tax Return Preparer*

■ I.R.C. Sec. 6694(a) subjects a tax return preparer to penalty for knowingly asserting frivolous positions that do not have a realistic possibility for being sustained on the merits. Under this statute, the United States has to prove that (1) there was an unrealistic position taken in respect to any return or claim for refund; (2) defendant knew or reasonably should have known about this position; and (3) such position was frivolous. As is shown below, Abdo has asserted numerous posi-

tions on behalf of his tax preparation clients which he knew or reasonably should have known were unrealistic and frivolous.

First, Abdo has taken numerous unrealistic positions in respect to his clients' tax returns and claims of refund. Abdo filed over 168 amended federal income tax returns asserting an argument that I.R.C. Sec. 3121 exempts from the definition of "wages" (and therefore from "gross income" for federal income tax purposes) all Social Security taxes that are withheld from wages. First, I.R.C. Sec. 275(a)(1)(A) plainly prohibits the deduction of withheld Social Security tax from gross wages,[3] and courts have consistently upheld this statute. *See, e.g., Zwiener v. Commissioner,* 743 F.2d 273, 276 (5th Cir. 1984) (finding "no merit" in argument that Social Security and FICA taxes were exempt under Section 3121's definition of 'wages'); *Sickler v. Commissioner,* 1994 WL 510454 (U.S.Tax Ct. Sept. 19, 1994), 68 T.C.M. (CCH) 727 (1994). In fact, this court has had occasion to deal with this argument once before. In *Sickler v. United States,* the defendant alleged both that the income tax is unconstitutional because it was a direct tax and that he was not required to pay taxes on Social Security wages. 1992 WL 208172 at *1, 70 A.F.T.R.2d 92–5377(RIA) (M.D.N.C. July 1, 1992), *aff'd,* 989 F.2d 494 (4th Cir.1993).

This court found that both arguments were without merit, "legally unsound" and "patently absurd" and granted the Government's motion for summary judgment. *Id.* Second, Abdo's position is fundamentally flawed because the definition of "wages" in Section 3121 upon which Abdo relies for his support applies only to liability for employment tax, not for federal income tax. Moreover, the statute that defines "gross income" for purposes of calculating federal taxable income, I.R.C. Sec. 61(a), does not even use the term "wages," and instead uses the term "compensation for services."[4]

Abdo has also asserted arguments based on *Eisner v. Macomber* on behalf of his clients. Abdo's argument is not new nor is it correct. This argument is based on the Supreme Court's holding in *Eisner* that the term "income" was defined as " 'the gain derived from capital, from labor, or from both combined' " and did not include "gain accruing to capital." *Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920) (citations omitted). Since labor is exchanged for wages, the argument goes, taxpayers' wages are not "gain" and, therefore, are not taxable. On multiple occasions, Abdo cited this argument and reduced taxpayers' income to zero. Not only does he misstate the holding of this case,[5] but taxpayers who have

**3.** " (a) General rule.—No deduction shall be allowed for the following taxes:
(1) Federal income taxes, including -
(A) the tax imposed by section 3101 (relating to the tax on employees under the Federal Insurance Contributions Act FICA)."
I.R.C. Sec. 275. Similarly, I.R.C. Sec. 3502 provides "[t]he taxes imposed by section 3103 of chapter 21 ... shall not be allowed as a deduction to the taxpayer in computing taxable income under subtitle A." I.R.C. Sec. 3502.

**4.** " (a) General definition. -Except as otherwise provided in this subtitle, gross income

means *all income from whatever source derived,* including (but not limited to) the following items: (1) *Compensation for services ....*" I.R.C. Sec. 61 (emphasis added).

**5.** In *United States v. Connor,* the defendant asserted the same argument about *Eisner v. Macomber* as Abdo. 898 F.2d 942, 943 (3d Cir.1990). In response, the Third Circuit corrected this misinterpretation of precedent in holding in favor of the United States:

Connor purports to find authority for his argument in *Eisner v. Macomber,* ... a case patently inapposite because it held merely that a stock dividend made to shareholders

tried to defend themselves with this argument have been convicted of tax evasion.[6]

Abdo has also continuously asserted to his clients and potential clients that paying federal income tax is voluntary. Through his website, radio appearances, and e-mails, Abdo assured people that compliance with the federal income tax system was voluntary. Not surprisingly this position led to clients choosing to give zero per cent as a "voluntary contribution" to the Government. This "voluntary compliance" argument is similar to the *Eisner v. Macomber* argument and equally absurd.

Second, Abdo knew or reasonably should have known the unrealistic nature of these positions. Abdo is a well-educated man and holds himself out as an expert in tax matters. Furthermore, he has over twenty-eight years of experience. With this education and experience, Abdo was or certainly should have been aware of the volume of cases in the United States rejecting his positions. Just because Abdo does not personally agree with these decisions, including the earlier decision of this court, does not give him the right to violate the law by asserting unrealistic and frivolous positions on behalf of unknowledgeable clients. As this court has stated previously, "[t]axpayers are not entitled to create deductions of amounts reflecting their contribution to Government spending with which they do not agree." *Sickler*, 1992 WL 208172, at *1; *see also Dalton v. United States*, 800 F.2d 1316, 1319–20 (4th Cir.1986).

Lastly, Abdo's positions are frivolous. " '[T]he test for frivolousness is an objective one, under which we must evaluate [Abdo's] position in terms of its legal underpinnings.' " *Sickler*, 1992 WL 208172, at *1 (quoting *McKee v. United States*, 781 F.2d 1043, 1047 (4th Cir.1986)). Abdo claims that the United States has mischaracterized his legal arguments and that his real arguments are not frivolous. The court disagrees. Abdo has intentionally used unrealistic positions based on inaccurate and outdated legal interpretations in order to claim tax refunds from the United States Government. Because Abdo's arguments are without legal support, they are frivolous.

### B. Section 6695: Failure to Supply Client List

I.R.C. Sec. 6695 penalizes a tax return preparer for failing to comply with I.R.C. Sec. 6107(b). I.R.C. Sec. 6107(b) requires tax return preparers to maintain a client list for the preceding three years and to allow the Government to inspect the list upon request. The IRS asked Abdo twice to produce his client list but to no avail. Although Abdo contends that he could not produce the list due to computer problems, he offers no support for this other than his self-serving statement in his affidavit. In fact, Abdo did not provide the requested client list until this court ordered him to do so five months after the initial request.

---

in their proportionate interests against profits accumulated by the corporation was not income. As the Supreme Court later explained in *Commissioner v. Glenshaw Glass Co.*, ... the *Eisner* Court held that the distribution of a corporate stock dividend changed only the form of the taxpayer's capital investment and that because the taxpayer received nothing out of the compa-

ny's assets for his separate use and benefit, the distribution was not a taxable event. *Glenshaw* reiterated that Congress intended to use the full measure of its taxing power in creating the income tax.

*Id.* (citations omitted).

6. *See Bachner v. Commissioner*, 81 F.3d 1274 (3d Cir.1996); *Connor*, 898 F.2d at 942.

## C. *Misrepresentation of Eligibility to Practice*

I.R.C. Sec. 7407(b)(1)(B) authorizes injunctions against tax return preparers who misrepresent their eligibility to practice before the IRS. The United States offers evidence that Abdo, although not a certified public accountant ("CPA"), signed a power of attorney form and submitted it to the IRS identifying himself as a North Carolina CPA with registration number "17752." This registration number belongs to Clara Jean Pinkney, a CPA who has worked with Abdo.

Abdo does not deny that he signed his name to a power of attorney form. He asserts, however, that it was simply a mistake and not done with intent to deceive. Abdo also states that the CPA designation was not required for representation before the IRS. As a result, Abdo concludes that the explanation of the "oversight" was "reasonable" and further states that the United States has failed to show a pattern of this behavior. (Countercl. Def.'s Mem. Opp'n United States Mot. Summ. J. at 13.)

Although the United States has a plausible argument, especially in light of Abdo's other conduct, at this stage of the proceedings all reasonable inferences must be in favor of the non-movant. Therefore, the court will not base any injunctive relief on the ground that Abdo misrepresented his eligibility to practice before the IRS.

## D. *Guarantee of Tax Refund*

█ I.R.C. Sec. 7407(b)(1)(C) authorizes injunctions against tax return preparers who guarantee the payment of any tax refund. Under Abdo's "Tax Return Audit Challenge Program," if a refund could not be identified "the client gets $200.00 for her troubles." (Countercl. Def.'s Mem. Opp'n United States Mot. Summ. J. at 8.) Although Abdo claims that "the only guarantee was a guarantee of $200.00 . . . not a tax refund," the court finds otherwise. (*Id.*) Abdo is not simply guaranteeing $200.00. By making a statement like the one found in Abdo's program, Abdo is communicating to perspective clients that he guarantees results. As no reasonable person would expect a tax return preparer to voluntarily part with their money for free, the obvious implication drawn from Abdo's statement is that he is guaranteeing a tax refund.

## E. *Section 6700: Abusive Tax Shelters*

█ Section 6700 imposes a penalty on any person who organizes any shelter, plan, or arrangement and makes or furnishes or causes another person to make or furnish a statement regarding the excludability of income that the person knows or has reason to know is false or fraudulent as to any material matter. To establish that Abdo engaged in conduct subject to penalty under Section 6700, the United States must prove: (1) that Abdo has organized or sold (or assisted in the organization of) an entity, plan, or arrangement; (2) that he made or furnished statements concerning tax benefits to be derived from the entity, plan, or arrangement; (3) that he knew or had reason to know the statements were false or fraudulent; and (4) that the false or fraudulent statements pertained to a material matter. *See United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir.1990); *United States v. Kaun*, 827 F.2d 1144, 1149 (7th Cir.1987) ("Under Section 6700, the government must prove that the defendant was involved in an 'abusive tax shelter': that is, any entity whose principal purpose is the avoidance or evasion of federal income tax.").

Abdo argues that his "Tax Return Audit Challenge Program" is not ·a plan, arrangement, or entity. Instead, Abdo asserts that customers are simply asked to

"send in their tax returns for an evaluation which will net them $200.00 from Abdo if he could not identify a refund owed them." (Countercl. Def.'s Mem. Opp'n United States Mot. Summ. J. at 8.) Additionally, Abdo claims that this program was not a promotion or arrangement but was a "marketing concept designed to attract clients." (*Id.*)

Abdo's argument, however, "ignores the plain (and sweeping) language of the statute, which applies to '(ii) any investment plan or arrangement, or (iii) any other plan or arrangement.'" *United States v. Savoie*, 594 F.Supp. 678, 680 (D.La.1984). Furthermore, the Senate Finance Committee's Report concerning the statute confirms that Congress designed Section 6700 as a "penalty provision specifically directed towards promoters of abusive tax shelters *and other abusive tax avoidance schemes.*" S.Rep. No. 97–494, 97th Cong., 2d Sess. 266, *reprinted in* 1982 U.S.C.C.A.N. 781, 1014 (emphasis added).

Abdo "organized" at least two tax-avoidance plans or arrangements within the meaning of Section 6700. Through these plans, Abdo made numerous "false" or "fraudulent" statements concerning tax benefits. Abdo first organized and promoted a "voluntary compliance" plan on his website and on the radio to attract clients. Under this system, Abdo promoted the concept that only certain narrowly defined types of wages were taxable.[7] If a client did not earn wages under any of these three ATF categories (which most, if not all, would not), then the client would be told that his wages could be deducted. Then the client would determine his share of voluntary compliance. Generally, this would be zero. Based on this decision, Abdo would then prepare W–4 forms with up to fifteen exemptions listed and the client would then sign and file them with their employer. Once the employers accepted the forms, the employees would no longer have any taxes withheld and would stop paying taxes. Furthermore, Abdo was entitled to a contingency fee of fifty per cent of any tax refund amount received by the client. Abdo prepared tax returns based on this concept (that wages and other income are not taxable and citing *Eisner*) for at least four couples.

After this initial program, Abdo created and organized a new program called American Tax Planning Company "Tax Return Audit Challenge Program." This plan was based upon Abdo's Section 3121 argument that the term "wages" is misdefined by the IRS and actually excludes certain items, such as Social Security withholding. Under this program, Abdo would look at a person's prior tax returns and determine if there were any "errors" which would lead to a tax refund. If he did not find any errors, Abdo guaranteed them payment of $200.00 (and possibly up to $500.00). If errors were found that

---

7. Abdo's argument was that unless you were involved in an "excise taxable revenue event or activity" such as alcohol-, tobacco-, or firearm-related activities, you were not subject to income tax. (Countercl. Def.'s Mem. Opp'n United States Mot. Summ. J., Ex. C, at 43 1. 14 through 51 1. 19.) When asked during his deposition about a former client's tax return and whether his income was a "revenue" or "basically a taxable activity," Abdo's response was,

I don't believe so. I don't believe he's manufacturing tobacco; I don't believe he's distilling alcohol; I don't believe he's manufacturing firearms. I don't believe that what he does for his employer—and if memory serves me.correct, he indicated he was a computer programmer, something of that sort. That activity, computer programming, is not the activity that I've come to understand, under Subtitle D or Subtitle E of the Internal Revenue Code, as being the excise tax revenue activity.

(*Id.* at 44, 11. 8–20.)

would lead to a refund,[8] however, Abdo would re-file or amend the return and would be entitled to a fifty per cent contingency fee of any refund. Abdo also promised incentive payments in which initial clients would receive fees for all direct and indirect (secondary) referrals. At least two of Abdo's clients were recruited for this program.

Not only were Abdo's statements false and fraudulent, but Abdo knew that they were. Abdo alleges he possesses education, experience, and knowledge, and that he is an expert in tax matters. Furthermore, Abdo is familiar with the I.R.C., its accompanying regulations, and the federal case law construing them. Accordingly, the court presumes that he is also aware that his "voluntary compliance," ATF and Section 3121 arguments are without any legal support. In fact, Abdo has already testified that he was "not aware" of any other tax return preparer or tax professional in the United States who interpreted Section 3121 the way he does. (United States Mot. Summ. J., Ex. A, Abdo Dep. at 213, 11. 9–14.) Furthermore, Abdo is presumably aware that these arguments are simply variations of the same tired tax protester "wages are not income" argument that has long been deemed frivolous. Indeed, this argument has been rejected as many times as it has been asserted. *See, e.g., United States v. Connor,* 898 F.2d 942, 944 (3d Cir.1990) ("We take this opportunity to reiterate that wages are income within the meaning of the Sixteenth Amendment .... We will view arguments to the contrary as frivolous, which may subject the party asserting them to appropriate sanctions."); *Connor v. Commissioner,* 770 F.2d 17, 20 (2d Cir.1985) ("Wages are income. The argu-

ment that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions." (citation omitted)); *Peth v. Breitzmann,* 611 F.Supp. 50, 53 (E.D.Wis.1985) ("No court has ever accepted [the "wages are not income"] argument for the purpose of determining taxable income. Indeed, it has always been rejected. For once and for all, wages are taxable income. (citations omitted)).

Lastly, the above-described false statements found in Abdo's programs concern "material matter." A matter is considered material "if it would have a substantial impact on the decision-making process of a reasonably prudent investor." S.Rep. No. 97–494, 97th Cong.2d Sess. at 267 (1982 U.S.C.C.A.N. 781, 1015). The false representations contained in Abdo's programs are "material" because "[t]he taxpayers who have been or are now being audited by the IRS or are involved in litigation because they relied upon [Abdo's] representations should certainly have been informed about their complete lack of merit." *United States v. White,* 769 F.2d 511, 515 (8th Cir.1985). In other words, those clients who participated in Abdo's program and filed W-4 forms with their employers which falsely claimed that they were exempt from the requirements to withhold federal income taxes should certainly have been told that the arguments and ideas behind the program were baseless and were bound to cause them to be subjected to penalties.

## F. *Section 6701: Understatement of Tax Liability*

■ I.R.C. Sec. 6701(a) imposes a penalty on any person who (1) "aids or assists in, procures, or advises with respect to, the

---

8. This, of course, would be the expected result based on Abdo's untenable position under Section 3121.

preparation or presentation of any portion of a return, affidavit, claim, or other document," (2) "knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws," and (3) "knows that such portion (if so used) would result in an understatement of the liability for tax of another person." I.R.C. Sec. 6701. There is no dispute that Abdo is responsible for filling out and filing tax returns on behalf of over 200 clients. In many of these cases Abdo asserted positions that are legally unfounded and frivolous. Abdo is an educated man and a self-proclaimed tax expert who has been in the practice of tax advising, consulting, and preparation since 1980. With this education and expertise, however, comes responsibility. The law attributes to Abdo "a basic knowledge of the law such that [he] should reasonably be aware that [his] personal belief that paying taxes is a voluntary activity does not represent the current state of the law." *United States v. Raymond,* 228 F.3d 804, 812 (7th Cir. 2000). The same may be said about Abdo's Section 3121 argument. When Abdo asserted these positions in his clients' tax returns, he knew or had reason to believe that these positions were contrary to the law.

The Eighth Circuit dealt with a similar issue in *Mattingly v. United States,* 924 F.2d 785 (8th Cir.1991). In that case the court enjoined Mattingly, a tax return preparer, under Section 7601, noting that the IRS warned him in numerous communications about his frivolous arguments. *Id.* at 792. Like Mattingly, Abdo was warned numerous times about his frivolous filings. Not only did the IRS reject Abdo's argu-

ments and tax returns, but it sent numerous letters to Abdo's clients warning them that they could be subject to frivolous filing penalties. In fact, Abdo even told one client that he expected the IRS to reject his Section 3121 argument. As a result, Abdo violated I.R.C. Sec. 6701.

## II. *Appropriateness of Injunctive Relief*

■ Because Abdo has engaged in the prohibited conduct specified in I.R.C. Sec. 7407 and 7408, the court must now determine whether injunctive relief is appropriate to prevent the recurrence of such conduct. An injunction may issue without resort to the traditional equitable prerequisites [9] if a statute expressly authorizes the injunction. *See Time Warner Entm't/Advance—Newhouse P'ship v. Worldwide Elecs., L.C.,* 50 F.Supp.2d 1288, 1302 (S.D.Fla.1999); *see also Burlington N.R.R. Co. v. Department of Revenue,* 934 F.2d 1064, 1074–75 (9th Cir.1991); *Duke v. Uniroyal, Inc.,* 777 F.Supp. 428, 432–33 (E.D.N.C.1991). Because both Section 7407 and 7408 authorize injunctions, injunctive relief under these sections does not have to be established by resort to traditional equitable factors. Instead, courts rely on the factors identified in each individual section. *See United States v. Ernst & Whinney,* 735 F.2d 1296, 1303 (11th Cir.1984) (discussing injunction requirements under Section 7407); *White,* 769 F.2d at 515 (holding that Section 7408 sets forth the standards for injunctive relief).

### A. *Weighing of Factors*

■ To determine whether an injunction is appropriate under these sections,

---

**9.** *I.e.,* balancing of harms, likelihood of success on the merits, and public interest. *See* 11A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* Civ.2d § 2949 (2d ed.1995). However, application of these factors in the present case would clearly support injunctive relief, as the court found in entering its preliminary injunction on May 25, 2001.

courts "assess the totality of the circumstances surrounding Abdo and his violation, including such factors as": (1) "the gravity of harm caused by the offense;" (2) "the extent of the defendant's participation and his degree of scienter;" (3) "the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions;" (4) "the defendant's recognition of his own culpability;" and (5) "the sincerity of his assurances against future violations." *Kaun*, 827 F.2d at 1149–50.

### 1. *The gravity of harm*

Abdo's activities have harmed his clients substantially, both financially and psychologically. Numerous tax returns will have to be audited and some of Abdo's clients have already been assessed civil penalties under I.R.C. Sec. 6702 ("frivolous-return penalty"). A few of Abdo's clients are even facing possible criminal liability. But the damage is not only to clients' pocketbooks. At least one client stated that Abdo's representation had made her life "miserable." (Delores Turner Dep. at 25, 11. 8–11.) All of this could have been avoided if Abdo had only prepared the returns honestly and accurately.

Abdo has harmed not only his clients but the Government and general public as well. As one court has stated in a similar tax-avoidance case under Sec. 7407, "Defendant[ ] repeatedly engaged in conduct prohibited by statute, all to the detriment of the United States government and the taxpaying public. The large number of returns the defendant[ ] prepared over several years which understate [his] clients' tax liabilities demonstrates the gravity of the harm [he] caused." *United States v. Bailey*, 789 F.Supp. 788, 816 (N.D.Tex.1992). Abdo has filed over 200 tax returns alleging his

Section 3121 position, his "voluntary compliance" position, or his *Eisner v. Macomber* position. It is estimated that Abdo's conduct has created at least $243,000.00 in understated tax. The IRS has already spent valuable time on Abdo and his clients' frivolous tax returns. Because the IRS's computer system does not currently track amended return preparers, the IRS has had to manually detect many of Abdo's frivolous returns. This has required the IRS to appoint a person to deal strictly with returns submitted by Abdo. (Evid. Material Supp. U.S. Mot. T.R.O., Ex. D, Gonnell Decl., ¶ 4.)

### 2. *Extent of Abdo's participation and degree of scienter*

There is little doubt as to Abdo's participation here. Abdo created and produced these programs based on his own erroneous interpretations of the law. Abdo is a knowledgeable and educated man who has much experience in the area of tax preparation. He used this knowledge and experience to fabricate, recreate, and splice together frivolous and unrealistic arguments based on outdated holdings of cases and tax law. Moreover, Abdo deliberately and repeatedly engaged in this conduct in order to profit from his tax auditing programs. Despite Abdo's protestations that no evidence has been produced proving his knowledge that these activities were frivolous, unrealistic, and abusive tax shelters, his motives are easily discernible. "By building a reputation for drastically reducing tax liability or securing refunds when other tax preparers or even certified public accountants could not, [Abdo hoped to build] a large and prosperous tax-preparer business." *Bailey*, 789 F.Supp. at 817. Abdo hoped to build "Winston–Salem's next Piedmont Airlines" on the back of his frivolous and unrealistic tax-avoidance schemes. (United States Mot. Summ. J.,

Ex. A, Abdo Dep. at 11, 11. 3–4.) Although these programs were clearly designed to make Abdo money, they were also tax-avoidance schemes that Abdo knew were erroneous and illegal.

### 3. *Isolated or recurrent nature of infraction and likelihood of future ones*

Abdo's activities were not isolated, but were part of a money-making program designed to gain clients through a referral plan. Abdo prepared over 200 tax returns based on his frivolous positions. Abdo has shown no evidence of altering his unlawful behavior. Despite the imposition of a preliminary injunction by this court, Abdo has continued to assert his frivolous and unrealistic positions. In October 2001, five months after the injunction was issued, Abdo prepared and sent a hearing request letter on behalf of a client to the IRS in which he asserted his Section 3121 position. In his deposition, Abdo remained adamant that his tax positions are legally sound and valid. Furthermore, Abdo, a tax preparer, has yet to file any personal income tax return since at least the 1990 tax year. Abdo's recurrent violations and steadfast beliefs will likely cause substantial harm to the United States Government and the taxpaying public in the future without judicial relief.

### 4. *Abdo's recognition of culpability*

As stated above, Abdo continues to steadfastly deny any culpability or wrongdoing. He has stoutly defended his positions (except for his *Eisner v. Macomber* position which Abdo has "abandoned ... after further research." (Countercl. Def.'s Mem. Opp'n United States Mot. Summ. J. at 11.)) and refuses to accept any

positions to the contrary. As a tax preparer and adviser, Abdo's blatant disregard for the law and adamant defense of frivolous positions in the face of overwhelming evidence clearly interfere with the proper administration of the Internal Revenue laws.

### 5. *Sincerity of assurances against future violations*

Because Abdo has yet to acknowledge any violation, any assurance that he would not engage in future violations would be difficult to believe. As Abdo has shown on at least one occasion,[10] he has little respect for legal process and is unwilling to take responsibility for his actions.

Viewing the totality of Abdo's conduct and violations under these five factors, it is apparent that nothing short of a full injunction will stop his unlawful behavior.

### B. *Type of Injunction*

The court must make another decision, however; namely, whether to simply enjoin Abdo from further engaging in such conduct or to enjoin him from acting as an income tax preparer permanently. Under I.R.C. Sec. 7407(b)(2), if a court finds that the income tax return preparer continually or repeatedly engaged in the conduct prohibited by these sections, and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of the law, then it may impose a lifetime ban. Furthermore, I.R.C. Sec. 7402 provides additional authority for permanently enjoining Abdo. It authorizes injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." I.R.C. Sec. 7402(a).

---

**10.** Abdo was sanctioned for unethical and inappropriate behavior by the NASD in 1992. As a result, he was suspended and required to pay $25,000.00. Abdo never paid the fine and remains suspended.

In *United States v. Bailey,* the defendants prepared fraudulent income tax returns using a deceptive and indiscernible tax scheme. 789 F.Supp. 788. After reviewing the totality of the evidence and finding that the defendants engaged in conduct subject to civil and criminal penalties, the court issued a lifetime return preparation ban. *Id.* In *United States v. Nordbrock,* the court issued a lifetime return preparation ban because the defendant refused to turn over requested tax returns and client lists to the IRS for over three years. 38 F.3d 440, 447 (9th Cir. 1994).

Like the defendants in the aforementioned cases, Abdo's conduct is deserving of more than a simple injunction on prohibited conduct. He has continually asserted frivolous and unrealistic positions on numerous tax returns prepared on behalf of clients. He refused to turn over a client list to the IRS for months until ordered by this court to do so. He guaranteed tax refunds to his potential clients through his "Tax Return Audit Challenge Program." He created and administered an abusive tax shelter which resulted in the understatement of hundreds of thousands of dollars on behalf of clients. He has intentionally refused to file his own income tax return or pay taxes for at least twelve years based on his ATF argument. He has caused substantial financial harm to his clients, the United States, and the taxpaying public. Finally, he shows no signs of remorse or culpability and refuses to acknowledge any wrongdoing. As a result, the court will broadly apply both Sections 7407 and 7402(a).

### III. *First Amendment Concerns*

 Lastly, Abdo claims that a permanent injunction in this case would violate his First Amendment right to free speech. Although the First Amendment does protect many forms of expression, including the right to disagree with the law, it does not protect speech which is directed toward producing imminent lawless action or which proposes illegal activity or transactions. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Although Abdo is free to advocate change or talk about reforming the current tax law, he is not free to break the law or to instruct others to do so.

 Furthermore, the speech at issue is mostly of a commercial nature. Under each of his tax plans, Abdo charged monthly and contingency fees in exchange for his service of providing false and fraudulent tax advice, tax returns, or W–4 forms. Although commercial speech is protected by the First Amendment, false or misleading commercial speech is not. *See Virginia Pharmacy Bd. v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *see also In re R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982) (holding that advertising may be totally prohibited when the content or method suggests that it is inherently misleading). As the Supreme Court has held, "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake .... The First Amendment ... does not prohibit the State from ensuring that the stream of commercial information flow[s] cleanly as well as freely." *Virginia Pharmacy Bd.,* 425 U.S. at 771–72, 96 S.Ct. 1817.

Finally, many other courts have ordered permanent injunctions against tax return preparers for violations similar to those of Abdo despite any First Amendment concerns. *See, e.g., Kaun,* 827 F.2d at 1144; *Campbell,* 897 F.2d at 1317; *Nordbrock,* 38 F.3d at 440; *Savoie,* 594 F.Supp. at 678;

*United States v. Shugarman,* 596 F.Supp. 186 (E.D.Va.1984). Accordingly, the court finds no violation of Abdo's First Amendment rights in permanently enjoining him from acting as a tax preparer.

## CONCLUSION

The court will grant the Internal Revenue Service's motion for summary judgment. The court will also issue an injunction permanently barring Abdo from acting as an income tax preparer and from other related activities.

An order, judgment, and permanent injunction in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### *ORDER, JUDGMENT, and PERMANENT INJUNCTION*

For the reasons stated in a memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that the motion of the United States Internal Revenue Service for summary judgment on its counterclaim against Counterclaim Defendant Alfred Abdo, Jr., d/b/a American Tax Planning Company [Doc. # 14] is GRANTED;

IT IS FURTHER ORDERED AND ADJUDGED that, pursuant to Internal Revenue Code Sections 7402, 7407, and 7408, Alfred Abdo, Jr., and American Tax Planning Company, and their agents, representatives, employees, successors, and all other persons or entities in active concert or participation with Abdo, American Tax Planning Company, or either of them are **PERMANENTLY ENJOINED** from:

1. Preparing, assisting in the preparation of, or filing federal income tax returns on behalf of any other person or entity;

2. Giving any tax advice to any other person or entity for pay;

3. Falsely claiming or representing that Alfred Abdo, Jr., is a certified public accountant;

4. Threatening to sue or otherwise intimidating any individuals if they cooperate with the United States, revoke positions taken on amended tax returns, or admit liability or pay any frivolous return penalties assessed against them as a consequence of filing tax returns asserting Abdo's I.R.C. Section 3121(a) position, or taxes are voluntary position;

5. Disseminating materials or making statements, written, oral, or electronic that have the tendency to make the public believe that

 a. Paying income taxes is voluntary;

 b. Income taxes do not go to pay for government services;

 c. Individuals can withdraw from voluntarily paying federal income taxes;

 d. Wages are not subject to federal income taxes;

 e. There is no "gain" from exchanges of wages for labor and therefore that wages are not "income;"

 f. I.R.C. Section 3121 excepts from the definition of "wages" all withheld social-security taxes;

 g. The law and the Fourth Amendment to the United States Constitution prohibit the IRS from requiring taxpayers to provide information;

6. Selling, organizing, or promoting any abusive tax scheme in violation of I.R.C. Section 6700;

7. Engaging in any other activity subject to penalty under I.R.C. Sections 6694, 6695, 6700, and 6701; and

8. Engaging in any of the activities listed in Paragraphs 1 through 7 above

through the use of any other individual or entity;

IT IS FURTHER ORDERED that, within thirty (30) days of the entry of this Order and Judgment and Permanent Injunction, Alfred Abdo, Jr., mail a copy of this Order and Judgment and Permanent Injunction to every person for whom he has prepared a tax-related document; and

IT IS FURTHER ORDERED that within forty-five (45) days of the entry of this Order Alfred Abdo, Jr., provide evidence of his compliance with the foregoing paragraph by filing a declaration with this court setting out a complete list of names and addresses of individuals or entities to whom he has mailed a copy of this Order and Injunction. Failure to abide by this order may be punished by criminal contempt under 18 U.S.C. § 401.