**UNITED STATES of America, Plaintiff,**

v.

**Nash SONIBARE and Liberty Financial Group, Inc., Defendants.**

**Civil No. 06–497 (DWF/SRN).**

United States District Court, D. Minnesota.

Feb. 5, 2007.

567

Michael R. Pahl, Esq., U.S. Department of Justice, Tax Division, Washington, DC, for Plaintiff.

James C. Snyder, Sr., Esq., Snyder Law Office, PA, Roseville, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### INTRODUCTION

This case came before the Court on January 12, 2007, pursuant to Plaintiff United States of America's (the "Government") Motion for Summary Judgment against Defendants Nash Sonibare and Liberty Financial Group, Inc. (collectively, the "Defendants"). In its Complaint, the Government requests injunctive relief under 26 U.S.C. §§ 7407, 7408, for violations of 26 U.S.C. §§ 6701, 6694, and 6695, and unlawful interference with the enforcement of the internal revenue laws. For the reasons below, the Court grants the Government's motion.

### BACKGROUND[1]

Defendant Nash Sonibare has prepared over 3,373 federal income tax returns since 2002. Sonibare has primarily prepared tax returns for recent immigrants from various African countries who have limited English-language skills and little knowledge of the complexities of the Internal Revenue Code. Sonibare has prepared federal income tax returns through Defendant Liberty Financial Group, a corporation of which Sonibare is the sole shareholder.

On February 27, 2006, the Government brought a Motion for a Temporary Restraining Order ("TRO"), requesting that the Court temporarily restrain Sonibare from preparing federal tax returns. In support of that motion, the Government

---

1. The Government asserts that the exhibits attached to Sonibare's affidavits in support of his opposition memorandum contain private information regarding various witnesses. Because the Government has not filed a motion nor made any specific request regarding these exhibits, the Court does not address the Government's assertion.

submitted evidence showing that in 2002 and 2003, Internal Revenue Service ("IRS") special agents examined 30 of Sonibare's returns for the 2002 tax year, all of which contained one or more false or inflated Schedule A deductions for mortgage interest, charitable contributions, or personal property taxes, false or inflated Schedule C business losses, false or inflated education credits, false dependency exemptions, or false head of household status designations. Additionally, the Government submitted evidence that in February and March 2003, the IRS assessed penalties against Sonibare for preparing federal income tax returns that understated taxpayers' liabilities and contained unrealistic positions.

Further, the Government submitted evidence showing that since October 2004, the IRS has completed civil examinations of 88 returns prepared by Sonibare for the 2002–2004 tax years and that all 88 returns resulted in additional tax due. Through its examinations of the 88 returns, the IRS confirmed that Sonibare's customers have agreed to pay $233,364 in additional tax, or approximately $2,652 per return. The Government explained that the IRS continues to conduct examinations of returns prepared by Sonibare for the 2002–2004 tax years and estimates that Sonibare's fraudulent tax return preparation has caused over $8 million in tax loss based on an estimated additional tax owed of $2,652 on the 3,373 returns prepared by Sonibare since 2002.

In support of its motion for a TRO, the Government asserted that Sonibare repeatedly instructed his employees to sign returns that he had prepared. The Government also asserted that Sonibare signed IRS forms stating that he is a certified public accountant ("CPA"), yet admitted during an interview with the IRS that he is not a CPA. In addition, the Government alleged that Sonibare continued to prepare returns containing false claims for refunds after he was interviewed by IRS special agents as part of a criminal investigation. The Government's allegations were largely undisputed, though Sonibare did assert that the fact that 88 returns contained false information out of over 3,300 prepared returns was statistically insignificant. Additionally, Sonibare asserted that his customers signed their tax returns, thereby vouching that the information in the returns was true.

After conducting a hearing, and based on the evidence submitted, the Court granted the Government's motion for a TRO in an Order dated March 10, 2006 (the "March 10 Order"). In the March 10 Order, the Court ordered Sonibare to stop preparing federal income tax returns and to post notice at his place of business indicating that the Court had prohibited him from preparing such returns until further order of the Court. Five days later, in an Order dated March 15, 2006 (the "March 15 Order"), the Court found Sonibare in constructive civil contempt of court for violating the Court's March 10 Order. In the March 15 Order, the Court directed the United States Marshal's Service to immediately change the locks at Sonibare's place of business and post an order indicating that the Court had prohibited Sonibare from preparing federal income tax returns. The Court also ordered Sonibare to show cause why he should not be held in civil contempt of court at a hearing scheduled for March 24, 2006. Following the show-cause hearing, in an Order dated March 27, 2006, the Court found probable cause to hold Sonibare in constructive civil contempt for failing to post the March 10 Order at his place of business and for permitting federal tax returns to be prepared at his place of business. The Court also ordered Sonibare to close his business.

The Government now moves the Court for summary judgment and requests that the Court permanently enjoin Sonibare from preparing federal income tax returns. The Government relies on the evidence submitted in support of its motion for a TRO, the evidence submitted at the contempt hearing, and Sonibare's failure to respond to the Government's discovery requests. In particular, Sonibare failed to respond to the Government's First Set of Requests for Admission, Interrogatories, and Request for Production of Documents. The Government highlights several of these unanswered requests.

First, Sonibare failed to respond to the Government's request to identify the supposed "untruthful employees and untruthful taxpayers" upon whom Sonibare claims the Government relies. (Decl. of Michael R. Pahl ("Pahl Decl."), ¶ 1, Ex. 1.) Second, Sonibare failed to respond to the Government's request to admit that he had not "fired or disciplined any employees on the grounds that they have put false or incorrect information on federal tax returns that [he] signed as a return preparer." (*Id.* at p. 2.) Third, Sonibare failed to respond to the Government's request to admit that he had "never refused to file a federal income tax return for a customer on the grounds that [the] customer [had] presented [him] false or fraudulent information." (*Id.*) Finally, Sonibare failed to respond to the Government's request to identify "any employee whom [he has] fired, disciplined, warned, or taken any adverse action against on the grounds that the employee prepared a federal income tax return containing false or incorrect information for [his] signature as a return preparer" and to "identify any customer who has provided [him] false or incorrect information to report on a federal income tax return." (*Id.* at pp. 6, 8.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Injunctive Relief

■ The Government requests permanent injunctive relief under 26 U.S.C. §§ 7407, 7408. In relevant part, 26 U.S.C. § 7407 authorizes a court to enjoin any person who is an income tax return pre-

parer from further acting as an income tax return preparer if the court finds that that person has "continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of [subsection (b)] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title." Subsection (b) provides that injunctive relief is appropriate if the court finds that an income tax return preparer has:

(A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,

(B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as an income tax return preparer,

(C) guaranteed the payment of any tax refund or the allowance of any tax credit, or

(D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.

26 U.S.C. § 7407(b).[2] In relevant part, 26 U.S.C. § 7408 authorizes a court to enjoin persons who have engaged in conduct subject to penalty under 26 U.S.C. § 6701, in order to prevent the recurrence of such conduct.[3] In order to issue an injunction, the court must find that the defendant is a tax preparer, the conduct complained of must fall within one of the four areas of proscribed conduct in § 7407(b), and an injunction is appropriate to prevent the recurrence of the proscribed conduct. *United States v. Ernst & Whinney*, 735 F.2d 1296, 1303 (11th Cir.1984).

As stated above, the Government relies on the previous evidence submitted and Sonibare's failure to respond to the Government's discovery. The Government requests that Sonibare's failure to respond to its discovery requests be deemed admitted under Federal Rule of Civil Procedure 36(a).[4] The Government contends the evidence shows that Sonibare has repeatedly filed federal income tax returns containing false items, causing an estimated $8 million in tax loss and requiring the IRS to devote numerous revenue agents to audit Sonibare's returns. The Government also contends that Sonibare's violation of the Internal Revenue Code is widespread. Finally, the Government contends that the only way to stop Sonibare's proscribed conduct is to issue an injunction permanently barring him from preparing federal income tax returns because Sonibare has demonstrated that he will defy Court orders to continue his proscribed conduct.

In response, Sonibare admits that he is a tax preparer, but refutes that he has engaged in proscribed conduct or that a permanent injunction is appropriate. As

---

**2.** In relevant part, 26 U.S.C.A. § 6694 assesses a monetary penalty to an income tax return preparer's understatement of a taxpayer's liability. In relevant part, 26 U.S.C. § 6695 assesses additional penalties for various violations of the disclosure and record-keeping provisions of the statute.

**3.** In relevant part, 26 U.S.C. § 6701 prohibits any person from aiding or assisting in the preparation of a tax return when the person knows the return will result in the understatement of tax liability.

**4.** That rule provides, in relevant part, "[e]ach matter of which an admission is requested ... is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed.R.Civ.P. 36(a).

he did in response to the Government's motion for a TRO, Sonibare again contends that the Government's evidence that Sonibare has prepared 88 false tax returns is statistically insignificant when considering the total number of federal tax returns he has prepared. Additionally, Sonibare attacks the credibility of two witnesses that the Government relies upon, asserting that those witnesses falsified their own tax returns. Sonibare also contends that none of the witnesses deposed—six picked by the Government and six by Sonibare—testified that Sonibare encouraged false deductions.

■■■ The Court finds that the Government has proven each element by a preponderance of the evidence. First, Sonibare admits that he is a federal income tax return preparer. Second, the Court finds that Sonibare has engaged in proscribed conduct. Because Sonibare failed to answer the Government's requests for admissions and interrogatories, the Court deems this matter admitted. The Court finds that permitting Sonibare to answer the requested admissions—now that discovery has closed—would prejudice the Government and delay trial. Moreover, in his responsive memorandum, Sonibare failed to offer an explanation for why he failed to respond to the discovery requests. "Unanswered requests for admissions render the matter requested conclusively established for the purpose of that suit." *See Luick v. Graybar Elec. Co.*, 473 F.2d 1360, 1362 (8th Cir.1973). Therefore, because the matter in the requests is conclusively established, Sonibare may not rely on his defense that rogue employees or lying customers are to blame for the fraudulent income tax returns he prepared. *See id.* (holding that "a summary judgment may be based on admitted matter").

■■■ Here, the evidence shows that Sonibare has repeatedly prepared federal income tax returns that contain false or inflated Schedule A expenses, false Schedule C businesses and false or inflated Schedule C business losses, false education credits, false dependency exemptions, and other fraudulent items. These false representations have already caused $233,264 in tax loss and may result in as much as $8 million estimated tax loss. Additionally, it is undisputed that Sonibare falsely stated that he is a CPA. The evidence also establishes that Sonibare continually and repeatedly failed to sign returns he has prepared. The evidence further shows that Sonibare has engaged in other fraudulent or deceptive conduct substantially interfering with the proper administration of the tax laws, including offering one customer blank Goodwill receipts so that he could substantiate items given to other charities.

Additionally, the Court again rejects Sonibare's assertion that the Government's evidence is statistically weak. Although only a small percentage of Sonibare's claimed 7,500 federal tax returns have resulted in additional tax due, 100% of the 88 tax returns that the Government has audited have resulted in additional tax due. Therefore, it is misleading to suggest that the tax returns that have yet to be audited will not result in additional tax due. The Court also finds that the alleged lack of credibility of the two witnesses upon which the Government relies does not create a genuine issue of material fact. The Court finds that even if the two witnesses who notified the Government of Sonibare's fraudulent tax preparation are not credible, it is undisputed that 88 of the tax returns that the Government has audited have resulted in additional tax due. Furthermore, the Court deems admitted the Government's request that Sonibare admit that he is the person responsible for determining whether the information on a federal income tax return prepared by his business is true, accurate, and complete. (Pahl Decl. ¶ 1, Ex. 1 at 2.) Thus, the

Government does not need to rely on these witnesses' credibility given the audits it has conducted and the admitted discovery requests.

Further, the Court rejects Sonibare's assertion that a genuine issue of material fact exists based on Sonibare's allegation that none of the 12 witnesses deposed testified that Sonibare encouraged false deductions. At oral argument, the Government asserted that it did not conduct depositions in order to prove further fraud; rather, it conducted depositions to ascertain whether Sonibare had continued preparing federal income tax returns after the Court ordered him to stop. But regardless of why the Government deposed the witnesses, and notwithstanding that none of the 12 witnesses testified that Sonibare encouraged false deductions, the Court finds that there is sufficient evidence that Sonibare engaged in proscribed conduct based on the fraudulent tax returns that the IRS has already audited. Thus, viewing the evidence in the light most favorable to Sonibare, the Court finds that, as a matter of law, Sonibare has engaged in proscribed conduct.

Finally, the Court finds that issuing a permanent injunction is appropriate to prevent the recurrence of proscribed conduct.[5] Given that every one of the 88 tax returns that the Government has audited resulted in additional tax due, the Court finds that it is likely that Sonibare's further tax returns will also result in additional tax due. Sonibare's proscribed conduct was widespread and has already resulted in significant expense to the public. And notably, Sonibare has already defied the Court's March 10 Order requiring him to cease preparing federal income tax returns and to post notice of that Order at his business. Accordingly, the Court finds that issuing a permanent injunction is necessary to prevent Sonibare from continuing to prepare fraudulent tax returns.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Government's Motion for Summary Judgment (Doc. No. 38) is **GRANTED.**

2. The Court orders that Sonibare and his agents, servants, employees, independent contractors, and those persons in active concert or participation with him who receive actual notice of this Order are permanently enjoined from:

a. Preparing or assisting in the preparation of any federal tax return, amended return, or claim for refund, for any person or entity other than himself (or his spouse, if filing a joint return);

b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694, including preparing tax returns or claims for refund that include unrealistic or frivolous positions;

c. Engaging in conduct subject to penalty under 26 U.S.C. § 6701, including preparing or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that he knows will (if so used) result in an understatement of another person's tax liability;

d. Engaging in conduct subject to penalty under 26 U.S.C. § 6695, including failing to sign returns he prepares;

**5.** The Court may issue an injunction without applying the traditional equitable factors if a statute expressly authorizes the injunction. *Abdo v. U.S. IRS*, 234 F.Supp.2d 553, 564 (M.D.N.C.2002). Because §§ 7407 and 7408 authorize injunctions, the Court need not apply the traditional equitable factors delineated in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981). But even if the Court were to analyze these factors as it did in the March 10 Order, they would support granting injunctive relief.

e. Engaging in any conduct that interferes with the proper administration and enforcement of the internal revenue laws;

f. Providing any tax advice or services to any person or entity, including providing tax consulting services to customers or representing customers before the IRS;

g. Misrepresenting his credentials as a federal-income-tax return preparer, in violation of 26 U.S.C. § 7402;

h. Instructing, advising, or assisting taxpayers to understate their federal income tax liabilities; and

i. Misrepresenting any of the terms of this Order.

3. The Court orders Sonibare to mail, at his own expense, a copy of this injunction order within 14 days of the entry of this Order to all persons and entities for whom he prepared any federal income tax returns, amended returns, refund claim, or other federal tax-related documents since January 1, 2000. Sonibare shall file a certificate of compliance, signed under penalty of perjury, with the Court within 40 days of the entry of this Order.

4. The Court further orders Sonibare to turn over to the United States within 15 days of the entry of this Order a complete list of all persons for whom he prepared (or helped to prepare) any federal tax return, amended return, or refund claim since January 1, 2000, such list to include each such person's name, address, phone number, e-mail address, social security number or employer identification number, and the tax period(s) to which or for which such return, amended return, or refund claim relates. The list shall include all customers whose returns Sonibare helped to prepare, even if those returns were filed listing someone else as preparer or listing someone else's social security or employer identification number as preparer, or list-ing someone else's electronic filing number.